# EXHIBIT A

LOCKS LAW FIRM
By: Andrew J. DuPont, Esquire
Attorney I.D. No.: 91305
The Curtis Center
601 Walnut Street, Suite 720 East
Philadelphia, PA 19106
adupont@lockslaw.com
T: (215) 893-0100
F: (215) 893-3444

*Filed and Attested by the
Office of Judicial Records
31 OCT 2024 09:43 am*

THIS IS A MAJOR JURY TRIAL
ASSESSMENT OF DAMAGES
HEARING REQUIRED

*Attorneys for Plaintiffs*

|  |  |
|---|---|
| Tammy Lockett, as Beneficiary and Personal Representative of the Estate of Donald Raymond, Sr. 2000 Carondelet Street New Orleans, LA 70130 | COURT OF COMMON PLEAS PHILADELPHIA COUNTY CIVIL TRIAL DIVISION |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | AUGUST TERM, 2024 |
| E.I. du Pont de Nemours and Company 1007 Market Street Wilmington, DE 19898 | No. 01938 |
| BASF Corporation 100 Park Avenue Florham Park, NJ 07932 | |
| The Sherwin-Williams Company 101 Prospect Avenue N.W., Cleveland, OH 44155 | |
| PPG Industries, Inc. 1 PPG PL Pittsburgh, PA 15222 | |
| Energy Transfer (R&M), LLC 3801 West Chest Pike Newtown Square, PA 19073 | |
| Ashland, LLC 50 E. Rivercenter Boulevard Covington, KY 41012 | |

1

Case ID: 240801938

**Univar Solutions USA, Inc.**                    :
**680 Elmwood Ave.,**                             :
**Sharon Hill, PA 19079**                         :
                                                  :
**Union Oil Company of California d/b/a**         :
**Unocal, individually as Successor-in-Interest** :
**To American Mineral Spirits Company**          :
**P.O. Box 6028**                                 :
**San Ramon, CA 94583**                           :
                                                  :
**Shell Oil Company**                             :
**One Shell Plaza**                               :
**910 Louisiana Street**                          :
**Houston, TX 77002**                             :
                                                  :
**Atlantic Richfield Company**                    :
**501 Westlake Park Blvd**                        :
**Houston, TX 77079-7036**                        :
                                                  :
**JOHN DOES 1 - 20,**                             :
**Defendants**                                    :
                                                  :

---

## COMPLAINT

## <u>NOTICE TO PLEAD</u>
### CODE 2T

You have been sued in this Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance, personally, or by an attorney, and filing in writing with the Court your defense objections to the claims set forth against you.

You are warned that if you fail to do so, the case may proceed the Court without further notice for any money claims in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
One Reading Center
Philadelphia, PA 19107
(215) 238-1701

Le han demandado a usted en la corte. Si desea defenderse Contra las quejas presentadas es absolutamente necesario que usted responda dentro de 20 dias despues de ser servideo Con esta demanda y aviso. Para defenderse, es necesario que used, o su abogado, registre con la corte en forma escrita, el punto de vista de usted y cualquier objeccion contra las quejas en esta demanda.without you, and a judgment may be entered against you by Recuerde: Si usted no reponde a esta demanda, se puede proseguir con el processo sin su participacion. Entonces, la corte puede, sin notificarlo, decidir a favor del demandante y requerira que usted cumpla con todas las provisiones de esta demanda. Por razon De esa decision, es posible que Usted pueda perder dinero, propiedad o estros derechos importantes.

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENET. SI NO TIENE ABOGADO O SI NOTIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO. VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PAPA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

SOCIACION DE LICENCIADOS DE FILADELFIA
Servicio De Referencia e Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-1701

Case ID: 240801938

**LOCKS LAW FIRM**
**By: Andrew J. DuPont, Esquire**
**Attorney I.D. No.: 91305**
**The Curtis Center**
**601 Walnut Street, Suite 720 East**
**Philadelphia, PA 19106**
adupont@lockslaw.com
**T: (215) 893-0100**
**F: (215) 893-3444**

THIS IS A MAJOR JURY TRIAL
ASSESSMENT OF DAMAGES
HEARING REQUIRED

*Attorneys for Plaintiffs*

---

| | | |
|---|---|---|
| **Tammy Lockett, as Beneficiary and Personal Representative of the Estate of Donald Raymond, Sr.** | : | **COURT OF COMMON PLEAS PHILADELPHIA COUNTY** |
| **2000 Carondelet Street** | : | |
| **New Orleans, LA 70130** | : | **CIVIL TRIAL DIVISION** |
| | : | |
| **Plaintiffs,** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **v.** | : | **AUGUST TERM, 2024** |
| | : | |
| **E.I. du Pont de Nemours and Company, et al.,** | : | **No. 059542** |
| | : | |
| **Defendants.** | : | |

## PLAINTIFFS' COMPLAINT

## CODE 2T

## JURISDICTION AND VENUE

1.      Jurisdiction is conferred upon this Court pursuant to 42 Pa.C.S. §5301, since every Defendant continuously and systematically conducts and/or transacts a part of its general business within the Commonwealth of Pennsylvania and the County of Philadelphia, and/or is incorporated under or qualified as a foreign corporation under the laws of this Commonwealth. Specific jurisdiction exists over each and every Defendant because they committed tortious conduct contributing to the Plaintiffs' causes of action in Pennsylvania. This court also has general personal jurisdiction over those Defendant that are organized under the laws of Pennsylvania, have a

3

Case ID: 240801938

principal place of business in Pennsylvania, or that have registered with the Pennsylvania Department of State and thereby consented to the general personal jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S. § 5301(a)(2)(i)-(ii), 15 Pa.C.S. § 402(d) and 15 Pa.C.S. 376(f).

2.      Venue in this Court is proper pursuant to Pa.R.C.P. 1006 and Pa.R.C.P. 2179, since every Defendant regularly conducts business within the County of Philadelphia, and transactions and occurrences out of which the cause of action arose occurred in Philadelphia County, and because Defendants made tortious decisions, acts and omissions with regards to the manufacture, sale, design, marketing and warnings for the carcinogen-containing products and/or acted in conspiracy with other Defendants located within Philadelphia County. Venue is also proper, in addition to other reasons averred herein, because E.I. du Pont de Nemours and Company during times relevant hereto maintained the Marshall Laboratory research and development facility in the Greys Ferry section of the City and County of Philadelphia, where, upon information and belief, carcinogen-containing paints and solvents were researched, developed, formulated and designed and where decisions to manufacture benzene-containing solvents and coatings and hexavalent-containing coatings were made and where it obtained knowledge of the benzene content, hexavalent chromium conduct and health hazards of its products, along with the health hazards thereof.

## FACTS COMMON TO ALL COUNTS

3.      Tammy Lockett ("Spouse Plaintiff") resides at the above stated address. Donald Raymond, Deceased ("Plaintiff") was married by common law to Tammy Lockett.

4.      At all times material hereto, Plaintiff was employed as an automotive painter where he was exposed to Defendants' hexavalent chromium-containing products.

5.      As a condition of his employment in the following facilities above, Plaintiff worked

4

directly and indirectly with and was directly and indirectly exposed to, on a daily or almost daily basis, various hexavalent chromium-containing coatings, including but not limited to paints and primers (hereinafter "hexavalent chromium-containing products") and various benzene-containing paints, primers, solvents, lacquer thinners, enamel reducers and urethane reducers (hereinafter "benzene-containing products") which products and/or their ingredients, were manufactured, refined, designed, produced, processed, compounded, converted, packaged, sold, distributed, marketed, re-labeled, supplied and/or otherwise placed into the stream of commerce by the Defendants. Collectively the hexavalent-containing products and benzene-containing products are referred to below as "carcinogen-containing products" unless otherwise specified.

6. Plaintiff worked directly and indirectly with and was directly and indirectly exposed to, on a daily or almost daily basis, the carcinogen-containing products which were manufactured, refined, designed, produced, processed, compounded, converted, packaged, sold, distributed, marketed, re-labeled, supplied and/or otherwise placed into the stream of commerce by the Defendants.

7. Plaintiff was exposed to the Defendants' carcinogen-containing products, and to the vapors, aerosols, mists and fogs from said products, by means of inhalation and dermal absorption (from direct dermal contact with said products, dermal contact with clothes contaminated by said products and/or dermal contact with benzene vapors in the air.).

8. As a direct and proximate result of his exposure to carcinogen-containing products and the Defendants' wrongful conduct, Plaintiff was caused to contract Lung Cancer (hereinafter "Lung Cancer"). Plaintiff was diagnosed with Lung Cancer May of 2022. Plaintiff suffered multiple symptoms and side effects of his Lung Cancer and the treatments therefore prior to his passing. Plaintiff died as a direct and proximate result of the Lung Cancer on August 3, 2022.

Case ID: 240801938

Plaintiffs plead the discovery rule because the Plaintiffs did not know at the time of Mr. Raymond's diagnosis and prior to his death that exposure to the carcinogen-containing products were the cause of his Lung Cancer, and a reasonable person would not at that time have known that the carcinogen-containing products were a cause of their Lung Cancer. Defendants engaged in a continuing fraud which tolled the statute of limitations and Plaintiff incorporates the averments in Count IV as to the Defendant's fraud.

## **DEFENDANTS**

9.      At all times material hereto, Defendants acted through their agents, ostensible agents, servants or employees, who were acting within the scope of their employment on the business of the Defendants. The Defendants' agents and ostensible agents included their employees and other persons and entities, since the Defendants are all corporations that must act through their employees and others that the Plaintiff are not able to identify by name without conducting discovery.

10.      The Defendants are all corporations, companies or other business entities which, during all times material hereto and for a time prior thereto, manufactured, produced, processed, compounded, converted, sold, distributed, marketed and/or otherwise placed into the stream of commerce, carcinogen-containing products and/or raw material ingredients used in carcinogen-containing products, all of which were used by and around Plaintiff and Plaintiff's employers, or are the successors to and/or otherwise liable for companies which engaged in said conduct.

11.      The Defendants are:

a)      E.I. DU PONT DE NEMOURS AND COMPANY (hereinafter referred to as "EIDP" or "Defendant"), , upon information and belief is an Delaware corporation or other business entity having its principal place of business at the above-stated address, and which

6

Case ID: 240801938

continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the City and County of Philadelphia. This court has general personal jurisdiction over the Defendant because the Defendant registered with the Pennsylvania Department of State and thereby consented to the general personal jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S. § 5301(a)(2)(i)-(ii), 15 Pa.C.S. § 402(d) and 15 Pa.C.S. 376(f). Defendant manufactured, produced, processed, compounded, converted, sold, marketed, distributed, supplied, re-labeled and/or otherwise placed into the stream of commerce carcinogen-containing products, including but not limited to R-M, Glassurit and Limco branded automotive lacquer paints and primers, enamel paints and primers, urethane paints and primers, lacquer thinners, enamel reducers, urethane reducers, and wax and grease removers to which the Plaintiff was exposed.

       b)    BASF CORPORATION (hereinafter referred to as "BASF" or "Defendant"), upon information and belief is an Delaware corporation or other business entity having its principal place of business at the above-stated address, and which continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the City and County of Philadelphia. This court has general personal jurisdiction over the Defendant because the Defendant registered with the Pennsylvania Department of State and thereby consented to the general personal jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S. § 5301(a)(2)(i)-(ii), 15 Pa.C.S. § 402(d) and 15 Pa.C.S. 376(f). Defendant manufactured, produced, processed, compounded, converted, sold, marketed, distributed, supplied, re-labeled and/or otherwise placed into the stream of commerce carcinogen-containing products, including but not limited to R-M, Glassurit and Limco branded automotive lacquer paints and primers, enamel paints and primers, urethane paints and primers, lacquer thinners, enamel reducers, urethane reducers, and wax and grease removers to which the Plaintiff was exposed.

Case ID: 240801938

c)     SHERWIN-WILLIAMS COMPANY (hereinafter "Sherwin-Williams" or "Defendant"), upon information and belief is an Ohio corporation or other business entity having its principal place of business at the above-stated address, and which continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the City and County of Philadelphia.  This court has general personal jurisdiction over the Defendant because the Defendant registered with the Pennsylvania Department of State and thereby consented to the general personal jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S. § 5301(a)(2)(i)-(ii), 15 Pa.C.S. § 402(d) and 15 Pa.C.S. 376(f). Defendant manufactured, produced, processed, compounded, converted, sold, marketed, distributed, supplied, re-labeled and/or otherwise placed into the stream of commerce carcinogen-containing products, including but not limited to Martin Senour and Sherwin-Williams branded automotive lacquer paints and primers, enamel paints and primers, urethane paints and primers, lacquer thinners, enamel reducers, urethane reducers, and wax and grease removers to which the Plaintiff was exposed.

d)     PPG INDUSTRIES, INC. (hereinafter "PPG" or "Defendant"), is believed to be a Pennsylvania corporation or other business entity having its principal place of business at the above-stated address, which continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the County of Philadelphia.  This court has general personal jurisdiction over the Defendant because it is organized under the laws of the Commonwealth of Pennsylvania and maintains its principal place of business in the Commonwealth of Pennsylvania. Defendant manufactured, produced, processed, compounded, converted, sold, marketed, distributed, supplied, re-labeled and/or otherwise placed into the stream of commerce carcinogen-containing products, including but not limited to Ditzler and PPG branded automotive lacquer paints and primers, enamel paints and primers, urethane paints and

8

primers, lacquer thinners, enamel reducers, urethane reducers, and wax and grease removers to which the Plaintiff was exposed.

e)        SUNOCO, LLC. (R&M) f/k/a Sunoco, Inc. (R&M) f/k/a Sun Company, Inc. and Sun Oil Company, Inc. (hereinafter "Sunoco" or "Defendant"), is believed to be a Pennsylvania corporation or other business entity having its principal place of business at the above-stated address, which continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the County of Philadelphia. This court has general personal jurisdiction over the Defendant because it is organized under the laws of the Commonwealth of Pennsylvania and maintains its principal place of business in the Commonwealth of Pennsylvania. Defendant manufactured, produced, processed, compounded, converted, sold, marketed, distributed, supplied, re-labeled and/or otherwise placed into the stream of commerce benzene-containing products, including but not limited to mineral spirits, toluene, xylene, naphtha, vm&p naphtha, hexane, heptane, rubber solvents and other benzene-containing solvents.

f)        ASHLAND LLC. f/k/a Ashland, Inc. (hereinafter "Ashland" or "Defendant"), upon information and belief is a Kentucky company or other business entity having its principal place of business at the above-stated address, and which continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the City and County of Philadelphia. This court had general jurisdiction over Ashland because it least one of its unit holders is a citizen of Pennsylvania and a limited liability company is a citizen of each state that its unit holders are citizens of. This court has general personal jurisdiction over the Defendant because the Defendant registered with the Pennsylvania Department of State and thereby consented to the general personal jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S. § 5301(a)(2)(i)-(ii), 15 Pa.C.S. § 402(d) and 15 Pa.C.S. 376(f). The Court has specific jurisdiction

Case ID: 240801938

over this Defendant because it supplied benzene-containing products to co-Defendants PPG and Dupont in Pennsylvania, from its own Pennsylvania facilities, which were defective and lacked warnings and were incorporated into the co-Defendant's benzene-containing products when they were manufactured in Pennsylvania which constituted tortious conduct creating the causal connection between Defendant and the Plaintiff in Pennsylvania. Defendant manufactured, produced, processed, compounded, converted, sold, marketed, distributed, supplied, re-labeled and/or otherwise placed into the stream of commerce benzene-containing products, including but not limited to mineral spirits, toluene, xylene, naphtha, vm&p naphtha, hexane, heptane, rubber solvents and other benzene-containing solvents.

g)     UNIVAR SOLUTIONS USA INC. f/k/a UNIVAR USA INC. Individually and as successor in interest to Chemcentral and Van Waters & Rogers (hereinafter "Univar" or "Defendant"), upon information and belief is a Delaware corporation or other business entity having its principal place of business at the above-stated address, and which continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the City and County of Philadelphia.  This court has general personal jurisdiction over the Defendant because the Defendant registered with the Pennsylvania Department of State and thereby consented to the general personal jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S. § 5301(a)(2)(i)-(ii), 15 Pa.C.S. § 402(d) and 15 Pa.C.S. 376(f). The Court has specific jurisdiction over this Defendant because it supplied benzene-containing products to co-Defendants PPG and Dupont in Pennsylvania, from its own Pennsylvania facilities, which were defective and lacked warnings and were incorporated into the co-Defendant's benzene-containing products when they were manufactured in Pennsylvania which constituted tortious conduct creating the causal connection between Defendant and the Plaintiff in Pennsylvania. Defendant manufactured,

10

produced, processed, compounded, converted, sold, marketed, distributed, supplied, re-labeled and/or otherwise placed into the stream of commerce benzene-containing products, including but not limited to mineral spirits, toluene, xylene, naphtha, vm&p naphtha, hexane, heptane, rubber solvents and other benzene-containing solvents.

h) UNION OIL COMPANY OF CALIFORNIA d/b/a/ Unocal and AMSCO, Individually and as Successor in Interest to American Mineral Spirits Company a/k/a AMSCO (hereinafter "UNOCAL" or "Defendant"), upon information and belief is a California corporation or other business entity having its principal place of business at the above-stated address, and which continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the City and County of Philadelphia. This court has general personal jurisdiction over the Defendant because the Defendant registered with the Pennsylvania Department of State and thereby consented to the general personal jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S. § 5301(a)(2)(i)-(ii), 15 Pa.C.S. § 402(d) and 15 Pa.C.S. 376(f). The Court has specific jurisdiction over this Defendant because it supplied benzene-containing products to co-Defendants PPG and Dupont in Pennsylvania, from its own Pennsylvania facilities, which were defective and lacked warnings and were incorporated into the co-Defendant's benzene-containing products when they were manufactured in Pennsylvania which constituted tortious conduct creating the causal connection between Defendant and the Plaintiff in Pennsylvania. Defendant manufactured, produced, processed, compounded, converted, sold, marketed, distributed, supplied, re-labeled and/or otherwise placed into the stream of commerce benzene-containing products, including but not limited to mineral spirits, toluene, xylene, naphtha, vm&p naphtha, hexane, heptane, rubber solvents and other benzene-containing solvents.

i) SHELL USA, INC. f/k/a Shell Oil Company (hereinafter "Shell" or

11

"Defendant"), upon information and belief is a Delaware company or other business entity having its principal place of business at the above-stated address, and which continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the City and County of Philadelphia. This court has general personal jurisdiction over the Defendant because the Defendant registered with the Pennsylvania Department of State and thereby consented to the general personal jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S. § 5301(a)(2)(i)-(ii), 15 Pa.C.S. § 402(d) and 15 Pa.C.S. 376(f). The Court has specific jurisdiction over this Defendant because it supplied benzene-containing products to co-Defendants PPG and Dupont in Pennsylvania, from its own Pennsylvania facilities, which were defective and lacked warnings and were incorporated into the co-Defendant's benzene-containing products when they were manufactured in Pennsylvania which constituted tortious conduct creating the causal connection between Defendant and the Plaintiff in Pennsylvania. Defendant manufactured, produced, processed, compounded, converted, sold, marketed, distributed, supplied, re-labeled and/or otherwise placed into the stream of commerce benzene-containing products, including but not limited to mineral spirits, toluene, xylene, naphtha, vm&p naphtha, hexane, heptane, rubber solvents and other benzene-containing solvents.

        j)     ATLANTIC RICHFIELD COMPANY, (hereinafter "ARCO" or "Defendant"), upon information and belief is a California corporation or other business entity having its principal place of business at the above-stated address, and which continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the City and County of Philadelphia. This court has general personal jurisdiction over the Defendant because the Defendant registered with the Pennsylvania Department of State and thereby consented to the general personal jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S. §

Case ID: 240801938

5301(a)(2)(i)-(ii), 15 Pa.C.S. § 402(d) and 15 Pa.C.S. 376(f). The Court has specific jurisdiction over the Defendant because it refined its benzene-containing solvents at the Point Breeze Refinery in Philadelphia. The Court has specific jurisdiction over this Defendant because it supplied benzene-containing products to co-Defendants PPG and Dupont in Pennsylvania, from its own Pennsylvania facilities, which were defective and lacked warnings and were incorporated into the co-Defendant's benzene-containing products when they were manufactured in Pennsylvania which constituted tortious conduct creating the causal connection between Defendant and the Plaintiff in Pennsylvania. Defendant manufactured, produced, processed, compounded, converted, sold, marketed, distributed, supplied, re-labeled and/or otherwise placed into the stream of commerce benzene-containing products, including but not limited to mineral spirits, toluene, xylene, naphtha, vm&p naphtha, hexane, heptane, rubber solvents and other benzene-containing solvents.

k)      JOHN DOE DEFENDANTS 1 – 10, manufacturers of solvents, lacquer thinners, enamel reducers, urethane reducers, paints, primers, coatings and other products that contained hexavalent chromium and benzene.

l)      JOHN DOE DEFENDANTS 11 – 20, sellers and distributors of solvents, enamel reducers, urethane reducers, paints, primers, coatings and other products that contained hexavalent chromium and benzene.

m)      JOHN DOE DEFENDANTS 21 – 30, manufacturers, sellers and distributors of benzene and/or hexavalent containing ingredients used in products that the Plaintiff was exposed to.

## COUNT I – NEGLIGENCE & GROSS NEGLIGENCE

12.      Plaintiffs hereby adopt and incorporate by reference each and every statement and averment contained in each of the foregoing paragraphs, as if each of said paragraphs were set

Case ID: 240801938

forth herein with particularity.

13.     Plaintiff used, worked with, around and in close proximity to, handled, inhaled, dermally absorbed, ingested and was otherwise directly and indirectly exposed to Defendants' carcinogen-containing products and/or vapors therefrom, during the ordinary, foreseeable and intended use of the Defendants' carcinogen-containing products.

14.     Defendants knew, or in the exercise of reasonable care, could and/or should have known that persons such as Plaintiff would used, worked with, around and in close proximity to, handled, inhaled, dermally absorbed, ingested and was otherwise directly and indirectly exposed to their carcinogen-containing products and/or vapors therefrom.

15.     Defendants knew, should and/or reasonably could have known that benzene causes blood and bone marrow poising and damage, damage to DNA, chromosome damage, cancer, lung cancer, leukemia and other blood and bone marrow disease and damage, and is otherwise extremely dangerous to human health. Defendants knew, should and/or reasonably could have known that benzene and hexavalent chromium cause lung cancer.

16.     Defendants knew, should and/or could have reasonably known that their carcinogen-containing products contained benzene and hexavalent chromium.

17.     Defendants knew, should and/or reasonably could have known that their carcinogen-containing products were carcinogenic, leukemogenic, inherently defective, ultra-hazardous, dangerous, deleterious, poisonous and otherwise highly harmful to the body and health of Plaintiff and persons similarly situated.

18.     Plaintiff, his employers and similarly situated persons did not and could not know of the nature and extent of the danger to their bodies and health, including the risk for cancer, lung cancer and leukemia, caused by exposure to the Defendants' carcinogen-containing products

14

and/or vapors therefrom.

19. The Defendants knew, should and/or reasonably could have known that Plaintiff and other persons similarly situated, would come into direct and indirect contact with, handle, inhale, ingest, dermally absorb and otherwise be exposed to benzene and hexavalent chromium during the ordinary and foreseeable use of said carcinogen-containing products.

20. The Defendants knew, should and/or reasonably could have known that Plaintiff, his employers and other persons similarly situated did not know, understand or fully appreciate nature and extent of the danger to their bodies and health, including the risk for cancer, lung cancer and leukemia, caused by exposure to the Defendants' carcinogen-containing products and/or vapors therefrom.

21. The Defendants had a duty to all consumers, workers and employers to exercise reasonable care in the creation, manufacturing, designing, formulating, refining, producing, processing, packaging, marketing, selling, warning, distributing and otherwise placing their respective carcinogen-containing products into the stream of commerce, including a duty to assure that the products did not pose a risk of injury, harm, disease and death, including cancer, lung cancer and leukemia.

22. Defendants breached their duty and were negligent and grossly negligent because, knowing all of the above, they:

    a. Manufactured, produced, designed, formulated, processed, packaged, compounded, converted, sold, marketed, re-labeled, supplied, distributed and/or otherwise placed in the stream of commerce products that contained benzene and hexavalent chromium, i.e. the carcinogen-containing products;

    b. Failed to take precautions to warn and/or adequately warn Plaintiff and his employers that their carcinogen-containing products contain benzene and hexavalent chromium;

    c. Failed to take precautions to warn and/or adequately warn Plaintiff and his

15

Case ID: 240801938

employers of the dangers to their health, including the nature and extent thereof, caused by exposure to benzene and the carcinogen-containing products, including the risk for contracting leukemia and lung cancer;

d.  Failed to take precautions to warn or adequately warn Plaintiff and his employers of the reasonably safe, sufficient and necessary safeguards, protective equipment, wearing apparel, appliances and engineering controls to protect them from exposure to benzene and hexavalent chromium, including leukemia and lung cancer, caused by working with and around the carcinogen-containing products;

e.  Failed and omitted to place any warnings or notices, or adequate and sufficient warnings and notices, on the containers in which the carcinogen-containing products were sold, contained, delivered and used in conjunction with, or shipping and billing documents, regarding the known or potential risks, dangers and harm therefrom, including contracting lymphohematopoietic disease and lung cancer, and the precautions necessary for use with the carcinogen-containing products to protect against the risk of dangers to health;

f.  Continued to manufacture, produce, process, sell, market, distribute, supply and/or otherwise place into the stream of commerce known cancer-causing products, to-wit, carcinogen-containing products;

g.  Failed and omitted to package the said chemical products so that, in the ordinary and foreseeable use and handling of them, Plaintiff and other persons similarly situated would not come into direct and indirect contact with, handle, inhale, dermally absorb and otherwise be exposed to carcinogen-containing products and/or vapors therefrom;

h.  Failed and omitted to take all reasonable, necessary, proper and prudent measures to assure that all necessary warnings, notices and instructions as to the products' benzene and hexavalent chromium content, leukemogenic, carcinogenic, deleterious, poisonous and dangerous nature, and the reasonable and necessary safe guards and procedures for use in conjunction with the products, reached the actual end user, and were complied with by Plaintiff's employers and end users including Plaintiff and other persons similarly situated;

i.  Defendants knew, should and/or could have known that the failure to warn and/or adequately warn of the risks, dangers and harm created by exposure to the carcinogen-containing products, and the reasonably safe and sufficient precautions, practices, personal protective equipment, wearing apparel, appliances and engineering controls to use with the carcinogen-containing products, would act as an inducement to Plaintiff and other end users similarly situated to come into direct and indirect contact with, handle, inhale, dermally absorb and otherwise be exposed to carcinogen-containing products and/or vapors therefrom, without proper and adequate protection;

j.  Defendants failed to train and advise the Plaintiff and his employers of how

16

Case ID: 240801938

to adopt and implement a safe, sufficient and proper plan and method to safely handle and use their carcinogen-containing products, resulting in the creation of an atmosphere that the Defendants' carcinogen-containing products were relatively safe to work with and around, handle, come in direct and indirect contact with, inhale, ingest, dermally absorb and otherwise be exposed to;

k.     Defendants knew, should and/or could have known, but also failed to take reasonable, sufficient and proper precautions reasonably calculated to recommend methods to improve the work environment, such as that of Plaintiff's employer, to which Defendants sold, marketed, distributed, supplied and/or otherwise placed into the stream of commerce, carcinogen-containing products;

l.     Failed to comply with all federal, state, local and trade statutes, codes, regulations and ordinances relating to the benzene content of their products, actions required to determine and analyze the hazardous nature of their products and the warnings and instructions accompanying same, including but not limited to 29 CFR 1910.1200; and 29 CFR 1910.1028;

m.     Failed to take all reasonable, necessary, proper and prudent measures to test their carcinogen-containing products to determine the products' benzene content and the quantity of benzene released into the breathing zone of the end user, and dermally absorbed by the end user, during the ordinary, intended and foreseeable use thereof;

n.     Failed to test their carcinogen-containing products for health hazards, including lymphohematopoietic disease and cancer;

o.     Failed to test the adequacy of labels, warnings and instructions appearing upon or distributed with their carcinogen-containing products;

p.     Failed to take all reasonable, necessary, proper and prudent measures to make their carcinogen-containing products safe for their intended and foreseeable use;

q.     Failed to properly and adequately manufacture, design, produce and process their products so as to eliminate all benzene and hexavalent chromium content thereof;

r.     Failed to research, develop, design, manufacture, produce, market and sell safer alternative products, to wit products which did not contain benzene and hexavalent chromium;

s.     Continued to manufacture and sell products containing benzene despite fully knowledge that there were safer alternative products;

t.     Continuing to manufacture and sell products containing benzene and hexavalent chromium despite actually manufacturing and selling products that did not contain benzene and hexavalent chromium which were used for the same purposes as their carcinogen-containing products and which were equally effective;

17

Case ID: 240801938

u.      Defendants had a post-sale duty to warn of the hazards and carcinogenic nature of their products; and

v.      For these reasons, Defendants grossly deviated from the ordinary standard of care.

23.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff contracted, suffered and died from Lung Cancer, and multiple side effects, conditions, illnesses and symptoms caused by Lung Cancer and the medical treatments necessitated thereby, which caused him pain, suffering, disability, disfigurement, deformity, impairment, mental anguish, anxiety, humiliation, and increased susceptibility to infection and progression of his cancers.

24.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff was prevented from engaging in those activities from which he derives life's pleasures.

25.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff has in the past, continues to and in the future will lose wages, including benefits, and earnings capacity.

26.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff was required to spend various sums of money for medical treatments, hospitalizations and medicines, to treat Plaintiff's disease and injuries, and has incurred additional economic expenses and losses, which expenses and loses may continue to accrue.

WHEREFORE, for all of the foregoing reasons, Plaintiffs pray for judgment from Defendants, individually, jointly and severally, in an amount in excess of fifty thousand dollars ($50,000.00), together with such other and further relief as this Court deems just and appropriate, under the circumstances, including punitive damages, costs, interest, and delay damages.

### COUNT II - BREACH OF IMPLIED WARRANTY

27.    Plaintiffs hereby adopt and incorporate by reference each and every statement and

Case ID: 240801938

averment contained in each of the foregoing paragraphs, as if each of said paragraphs were set forth herein with particularity.

28.     Defendants, individually, jointly and severally impliedly warranted, including under the Pennsylvania Uniform Commercial Code, to Plaintiff and other end users of their carcinogen-containing products, who were similarly situated, that the carcinogen-containing products, were merchantable, reasonably fit and safe for their intended, stated and described purpose and application, when in fact they were not.

29.     Defendants, individually, jointly and severally breached said warranties to Plaintiff, in that their carcinogen-containing products were inherently defective, ultra hazardous, dangerous, deleterious, poisonous, carcinogenic, unfit for use, not properly merchantable and not safe, as marketed, for their foreseeable use and purpose, in that they contained benzene and chlorinated solvents and caused lymphohematopoietic diseases, including leukemia, and Lung Cancer were defectively designed and lacked warnings, instructions and training, or adequate and sufficient warnings, instructions and training, as more fully set forth in Counts I, III, IV, and V, and including because:

        a.      They contained benzene and hexavalent chromium and benzene and hexavalent chromium cause cancer, leukemia and other harm to the blood, bone marrow and lungs of humans;

        b.      They lacked all elements necessary to make them safe for their intended and foreseeable use;

        c.      The Defendants failed to take precautions to warn and/or adequately warn Plaintiff and his employers that their carcinogen-containing products contained benzene and hexavalent chromium;

        d.      They lacked warnings and instructions, and or adequate warnings and instructions, of the dangers to human health, including the nature and extent thereof, caused by exposure to benzene and hexavalent chromium and the carcinogen-containing products, including the risk for contracting cancer, leukemia and other blood and bone marrow disease, and lung cancer;

Case ID: 240801938

e.   They did not warn or adequately warn Plaintiff and his employers of the reasonably safe, sufficient and necessary safeguards, protective equipment, wearing apparel, appliances and engineering controls to protect them from exposure to benzene and physical harm, including leukemia and lung cancer, caused by working with and around the carcinogen-containing products;

f.   There were no warnings or notices, or adequate and sufficient warnings and notices, on the containers in which the carcinogen-containing products were sold, contained, delivered and used in conjunction with, or shipping and billing documents, regarding the known or potential risks, dangers and harm therefrom, including contracting lymphohematopoietic disease, and the precautions necessary for use with the carcinogen-containing products to protect against the risk of dangers to health;

g.   Failed to train and advise, or adequately train and advise, the Plaintiff and his employers of how to adopt and implement a safe, sufficient and proper plan and method to safely handle and use their carcinogen-containing products, resulting in the creation of an atmosphere that the Defendants' carcinogen-containing products were relatively safe to work with and around, handle, come in direct and indirect contact with, inhale, ingest, dermally absorb and otherwise be exposed to;

h.   Failed to train, communicate, publish, adopt and enforce a safety plan and a safe method of handling and working with their carcinogen-containing products;

i.   They failed to recommend methods to improve the work environment;

j.   The Defendants failed to develop alternative products, including products which did not contain benzene and hexavalent chromium;

k.   The Defendants failed to assure that warnings, instructions, advisements, and training reached Plaintiff's employer, Plaintiff and other end users similarly situated, such that Plaintiff and other end users were adequately warned and protected, against the hazards posed by benzene and hexavalent chromium as contaminants in, or as ingredients of their carcinogen-containing products;

l.   The ordinary and foreseeable use of the Defendants' carcinogen-containing products, or those carcinogen-containing products of Defendants which were distributed to Plaintiff's employer, is an intrinsically dangerous and ultra hazardous activity;

m.   The Defendants' carcinogen-containing products were also defectively designed in that their hazards outweighed the benefit, if any, of the products' benzene and hexavalent chromium content;

n.   The Defendants' carcinogen-containing products were defective in that they failed to meet their consumer's expectations for safety;

20

Case ID: 240801938

o. Were packaged in a manner that increased the risk for exposure to benzene and hexavalent chromium and increased the amount of benzene and hexavalent chromium exposure end users sustained;

p. Contained directions for use that increased the risk for exposure to benzene and hexavalent chromium and increased the amount of benzene exposure end users sustained;

q. Continued to manufacture and sell products containing benzene and hexavalent chromium despite fully knowledge that there were safer alternative products; and,

r. Continuing to manufacture and sell products containing benzene and hexavalent chromium despite actually manufacturing and selling products that did not contain benzene which were used for the same purposes as their carcinogen-containing products and which were equally effective.

30. Defendants' warranties were made both orally and in writing, and Plaintiffs are no longer in possession of the written materials upon which such warranties were made.

31. As the direct and proximate result of the Defendants' acts and omissions, Plaintiff contracted, suffered and died from Lung Cancer, and multiple side effects, conditions, illnesses and symptoms caused by Lung Cancer, and the medical treatments necessitated thereby, which cause him pain, suffering, disability, disfigurement, deformity, impairment, mental anguish, anxiety, humiliation, and increased susceptibility to infection.

32. As the direct and proximate result of the Defendants' acts and omissions, Plaintiff is prevented from engaging in those activities from which he derives life's pleasures.

33. As the direct and proximate result of the Defendants' acts and omissions, Plaintiff has in the past, continues to and in the future will lose wages, including benefits, and earnings capacity.

34. As the direct and proximate result of the Defendants' acts and omissions, Plaintiff was required to spend various sums of money for medical treatments, hospitalizations and medicines, to treat Plaintiff's disease and injuries, which expenses may continue to accrue, and

Case ID: 240801938

has incurred additional economic expenses and losses, which expenses and loses may continue to accrue.

WHEREFORE, for all of the foregoing reasons, Plaintiffs pray for judgment from Defendants, individually, jointly and severally in an amount in excess of fifty thousand dollars ($50,000.00), together with such other and further relief as this Court deems just and appropriate, under the circumstances, including punitive damages, costs, interest, and delay damages.

## COUNT III - STRICT LIABILITY

35. Plaintiffs hereby adopt and incorporate by reference each and every statement and averment contained in each of the foregoing paragraphs, as if each of said paragraphs were set forth herein with particularity.

36. Defendants are and were, at all times material hereto, in the business of manufacturing, refining, designing, producing, processing, compounding, converting, packaging, selling, distributing, marketing, re-labeling, supplying and/or otherwise placing into the stream of commerce the carcinogen-containing products.

37. The carcinogen-containing products were expected to and did reach the Plaintiff and his employers without substantial change in the condition in which they were sold.

38. The carcinogen-containing products were defective when they left the Defendants' possession, custody and control.

39. Plaintiff and his employers were the intended and foreseeable users of the Defendants' carcinogen-containing products, and it was intended by and foreseeable to the Defendants that the carcinogen-containing products would be used in the manner that the Plaintiff and his employers used them in.

40. The Defendants' carcinogen-containing products were defective because:

Case ID: 240801938

a.      They contained benzene and hexavalent chromium, which chemicals cause cancer, lung cancer, MDS, leukemia and other harm to the blood, bone marrow and lungs of humans;

b.      They lacked all elements necessary to make them safe for their intended and foreseeable use;

c.      The Defendants failed to take precautions to warn and/or adequately warn Plaintiff and his employers that their carcinogen-containing products contained benzene;

d.      They lacked warnings and instructions, and or adequate warnings and instructions, of the dangers to human health, including the nature and extent thereof, caused by exposure to benzene and hexavalent chromium and the carcinogen-containing products, including the risk for contracting cancer, lung cancer, MDS leukemia and other blood and bone marrow disease;

e.      They did not warn or adequately warn Plaintiff and his employers of the reasonably safe, sufficient and necessary safeguards, protective equipment, wearing apparel, appliances and engineering controls to protect them from exposure to benzene and physical harm, including leukemia, MDS and lung cancer caused by working with and around the carcinogen-containing products;

f.      There were no warnings or notices, or adequate and sufficient warnings and notices, on the containers in which the carcinogen-containing products were sold, contained, delivered and used in conjunction with, or shipping and billing documents, regarding the known or potential risks, dangers and harm therefrom, including contracting lymphohematopoietic disease and lung cancer, and the precautions necessary for use with the carcinogen-containing products to protect against the risk of dangers to health;

g.      Failed to train and advise, or adequately train and advise, the Plaintiff and his employers of how to adopt and implement a safe, sufficient and proper plan and method to safely handle and use their carcinogen-containing products, resulting in the creation of an atmosphere that the Defendants' carcinogen-containing products were relatively safe to work with and around, handle, come in direct and indirect contact with, inhale, ingest, dermally absorb and otherwise be exposed to;

h.      Failed to train, communicate, publish, adopt and enforce a safety plan and a safe method of handling and working with their carcinogen-containing products;

i.      They failed to recommend methods to improve the work environment;

j.      The Defendants failed to develop alternative products, including products which did not contain benzene and hexavalent chromium;

k.      The Defendants failed to assure that warnings, instructions, advisements, and training reached Plaintiff's employer, Plaintiff and other end users similarly situated,

Case ID: 240801938

such that Plaintiff and other end users were adequately warned and protected, against the hazards posed by benzene and hexavalent chromium, as contaminants in, or as ingredients of their carcinogen-containing products;

l. The ordinary and foreseeable use of the Defendants' carcinogen-containing products, or those carcinogen-containing products of Defendants which were distributed to Plaintiff's employer, is an intrinsically dangerous and ultra hazardous activity;

m. The Defendants' carcinogen-containing products were also defectively designed in that their hazards outweighed the benefit, if any, of the products' benzene and hexavalent chromium content;

n. The Defendants' carcinogen-containing products were defective in that they failed to meet their consumer's expectations for safety;

o. Were packaged in a manner that increased the risk for exposure to benzene and increased the amount of benzene and hexavalent chromium exposure end users sustained;

p. Contained directions for use that increased the risk for exposure to benzene and hexavalent chromium and increased the amount of benzene exposure end users sustained; and

q. The Defendants' carcinogen-containing products were defective in that the Defendants manufactured and sold the same products, or substantially similar products, that did not contain benzene and hexavalent chromium which were used for the same purposes as their carcinogen-containing products and which were equally effective.

41. As the direct and proximate result of the Defendants' acts and omissions, Plaintiff contracted, suffered and died Lung Cancer, and multiple side effects, conditions, illnesses and symptoms caused by Lung Cancer, and the medical treatments necessitated thereby, which caused him pain, suffering, disability, disfigurement, deformity, impairment, mental anguish, anxiety, humiliation, and increased susceptibility to infection and progression of his cancers.

42. As the direct and proximate result of the Defendants' acts and omissions, Plaintiff was prevented from engaging in those activities from which he derives life's pleasures.

43. As the direct and proximate result of the Defendants' acts and omissions, Plaintiff has in the past, continues to and in the future will lose wages, including benefits, and earnings

24

Case ID: 240801938

capacity.

44.     As the direct and proximate result of the Defendants' acts and omissions, Plaintiff was required to spend various sums of money for medical treatments, hospitalizations and medicines, to treat Plaintiff's disease and injuries, and has incurred additional economic expenses and losses, which expenses and loses may continue to accrue.

WHEREFORE, for all of the foregoing reasons, Plaintiffs pray for judgment from Defendants, individually, jointly and severally in an amount in excess of fifty thousand dollars ($50,000.00), together with such other and further relief as this Court deems just and appropriate, under the circumstances, including punitive damages, costs, interest, and delay damages.

## COUNT IV - INTENTIONAL TORT – FRAUD

45.     Plaintiffs hereby adopt and incorporate by reference each and every statement and averment contained in each of the foregoing paragraphs, as if each of said paragraphs were set forth herein with particularity.

46.     In researching, testing, manufacturing, distributing, labeling, and marketing benzene and hexavalent chromium and the carcinogen-containing products, and through their membership and affiliation with various industry and trade organizations, defendants, and each of them, did so with conscious disregard for the safety of the users of said carcinogen-containing products, in that said defendants had prior knowledge that benzene is an insidious blood and bone marrow poison, that benzene and hexavalent chromium are toxic to the lungs and carcinogens, that there is no safe level of exposure to benzene and hexavalent chromium and that there was a high risk of injury or death resulting from exposure to benzene and benzene-containing solvents, including, but not limited to, lung cancer, leukemia, aplastic anemia, and other blood and other bone marrow diseases. Said knowledge was obtained, in part, from scientific studies and medical

Case ID: 240801938

data to which defendants had access, as well as scientific studies performed by, at the request of, or with the assistance of, said defendants, and which knowledge was obtained by said defendants on or before 1948. Despite this knowledge, the defendants acted to manipulate public information and knowledge in order to give the impression that benzene and carcinogen-containing products were safe and to prevent the disclosure of the information available to the defendants regarding the true and full nature of the health hazards of benzene and hexavalent chromium and carcinogen-containing products.

47.     Defendants knew that users of the carcinogen-containing products, as well as members of the general public who would be exposed to the carcinogen-containing products, had no knowledge or information indicating that there was benzene or hexavalent chromium in the carcinogen-containing products

48.     Defendants knew that users of the carcinogen-containing products did not know that exposure to the carcinogen-containing products could cause cancer.

49.     Defendants knew that users of the carcinogen-containing products, as well as members of general public, would assume, and in fact did assume, that exposure to the carcinogen-containing products was safe, when, in fact, said exposure was extremely hazardous to human life.

50.     The Plaintiff and members of the public did not know that carcinogen-containing products contained benzene and hexavalent chromium and exposed them to benzene and hexavalent chromium.

51.     The Plaintiff and members of the public did not know that exposure to carcinogen-containing products would cause cancer.

52.     Dupont, BASF, Sherwin-Williams, PPG, Sunoco, Ashland, Unocal and Shell were members of the National Safety Council (NSC) at all times relevant to this case.

Case ID: 240801938

53. Dupont, Sunoco, Ashland, Unocal and Shell were members of the American Petroleum Institute (API) at all times relevant to this case.

54. In the spring of 1923, at a meeting of the NSC's Chemical and Rubber Sections, it was reported that for three years the committee collected proof of at least 15 fatal and 83 nonfatal cases of benzene poisoning immediately preceding 1923.

55. In October 1924, during the Thirteenth Annual Safety Congress of the NSC, it was reported by the Chemical Section's Industrial Poison Committee that the committee was preparing a proposed bulletin on benzol (also known as benzene) indicating that the characteristic signs of benzene poisoning included a marked decrease in white blood cells, decrease in red blood cells, and aplastic anemia. Further, it was reported that 15 deaths and 83 cases of sickness occurred due to benzol poisoning during the past few years, and that 11 of the deaths and 81 of the sicknesses resulted from habitual exposure to lower concentrations of benzol.

56. On October 9, 1936, Robert B. Hunt, Medical Adviser, American Mutual Liability Insurance Co. presented the paper The Lesser Known Facts About Common Occupational Diseases to the Occupational Diseases Section. In that paper, Mr. Hunt wrote that, "Benzol is extremely poisonous, entering either the nose or mouth or absorbed through the skin. Its action within the body is varied and may produce a multitude of signs and symptoms. The bone marrow becomes affected which in turn alters the character of the blood; hemorrhages are common; it may cause death."

57. In 1950, the NSC published that, "Chronic benzene poisoning affects the blood and blood forming organs, producing serious degeneration in the bone marrow. . . When the damage is severe, no known treatment will restore the marrow to normal or make it able to perform its vital functions of furnishing red blood cells, white blood cells, and blood platelets." Further, and with

Case ID: 240801938

respect to benzene exposure, the NSC published that, "There is no way to determine the sensitivity of an individual beforehand. Causes of fatal poisoning have been recorded from very light exposures."

58.     In 1956, during the Forty Fourth National Safety Congress of the NSC, John H. Foulger, MD, Director of Dupont's Haskell Laboratory, addressed the NSC's Aviation Section and, among his comments, stated that, "[f]or many years, it has been known that chronic exposure to benzol can produce severe injury to bone marrow. It is often incurable."

59.     In 1960, the MCA issued a Chemical Safety Data Sheet SD2 Properties and Essential Information for Safe Handling and Use of Benzene 1960 (3rd Edition), in which it was published that, "[t]he principal hazard [of benzene] is from the inhalation of the vapors of benzene. Acute poisoning results from inhalation of high concentrations of vapor (above 3,000 ppm volume in air) usually for short periods of time, often in a matter of minutes. Chronic poisoning results from daily exposure to unsafe concentrations of benzene vapor over a prolonged period of time." Further, it was stated that chronic exposures to benzene can result in "weakness and anemia (reduction in the number of red blood cells and other blood constituents) due to the effects on the blood forming organs."

60.     Defendants maintained a copy of the 1948 publication "Occupational Medicine and Industrial Hygiene," by Rutherford T. Johnstone, A.B., M.D. of the University of California, Los Angeles. In this publication, Dr. Johnstone wrote that, "While the use of benzol in industry has considerably reduced in recent years, the incidence of benzol poisoning is still fairly frequent. Too often is benzol hidden under a trade name or is carelessly substituted for less toxic solvents." Dr. Johnstone continued to write that, "Chronic benzol poisoning usually produces severe degrees of injury to the blood forming organs, and often proves fatal." These warnings were not provided by

Case ID: 240801938

Defendants.

61. Defendants maintained a copy of the Third Edition of N. Irving Sax's authoritative textbook "Dangerous Properties of Industrial Materials," dated 1968. Sax reported that benzene "[p]oisoning occurs most commonly through inhalation of the vapor, though benzene can penetrate the skin, and thus contribute to poisoning" and that "chronic, rather than acute form of benzene poisoning is important in industry; it has toxic action on the blood forming organs." Further, Sax stated that, "cases of myeloid leukemia have been reported" from benzene exposure. No such advice was provided by Defendants.

62. Defendants maintained a copy of Alice Hamilton's Industrial Toxicology, Third Edition, published in 1974. Therein, Dr. Hamilton wrote that, "[i]t is now generally accepted that benzene can produce leukemia of varying forms and that such leukemia can appear with or without an antecedent history of aplastic anemia." Defendants' product labels did not warn that benzene exposure causes leukemia.

63. Defendants possessed a copy of the API's 1948 Toxicological Review on benzene and knew as the result that exposure to benzene causes cancer and that the only absolutely safe concentration of benzene exposure is zero.

64. Dupont intentionally used hexavalent chromium in its hexavalent chromium containing products.

65. Dupont intentionally used benzene-containing solvents as ingredients in its benzene-containing products.

66. Dupont knew that hexavalent chromium causes cancer at the time it used hexavalent chromium in its hexavalent-chromium containing products.

67. Dupont knew that benzene causes blood diseases and cancer at the time it used

Case ID: 240801938

benzene-containing solvents as ingredients in its benzene-containing products.

68.    Dupont subjectively appreciated that the presence of a carcinogen in a product and exposure to carcinogen from a product was material information that a product user would consider when determining whether to purchase and use a product.

69.    Dupont subjectively knew and intended that users would rely upon the lack of warning, disclosure or marketing of the presence of a carcinogen in its products when deciding to purchase and use those products.

70.    Dupont intentionally and knowingly withheld its knowledge and information that there was benzene and hexavalent chromium in its products and that benzene and hexavalent chromium cause cancer when it labeled, wrote warnings and marketed the products because it knew that so doing with induce users to purchase and use the products.

71.    Dupont affirmatively misrepresented that its products did not contain benzene or hexavalent chromium and that they did not pose a cancer hazard when it labeled, wrote warnings and marketed the products.

72.    Plaintiff relied on Dupont's fraudulent misrepresentations and omissions when he decided to purchase and use Dupont's products.

73.    Plaintiff's reliance on Dupont's fraudulent misrepresentations and omissions caused him harm because he used the products exposing him to benzene and hexavalent chromium and causing his lung cancer.

74.    BASF intentionally used hexavalent chromium in its hexavalent chromium containing products.

75.    BASF intentionally used benzene-containing solvents as ingredients in its benzene-containing products.

Case ID: 240801938

76.     BASF knew that hexavalent chromium causes cancer at the time it used hexavalent chromium in its hexavalent-chromium containing products.

77.     BASF knew that benzene causes blood diseases and cancer at the time it used benzene-containing solvents as ingredients in its benzene-containing products.

78.     BASF subjectively appreciated that the presence of a carcinogen in a product and exposure to carcinogen from a product was material information that a product user would consider when determining whether to purchase and use a product.

79.     BASF subjectively knew and intended that users would rely upon the lack of warning, disclosure or marketing of the presence of a carcinogen in its products when deciding to purchase and use those products.

80.     BASF intentionally and knowingly withheld its knowledge and information that there was benzene and hexavalent chromium in its products and that benzene and hexavalent chromium cause cancer when it labeled, wrote warnings and marketed the products because it knew that so doing with induce users to purchase and use the products.

81.     BASF affirmatively misrepresented that its products did not contain benzene or hexavalent chromium and that they did not pose a cancer hazard when it labeled, wrote warnings and marketed the products.

82.     Plaintiff relied on BASF's fraudulent misrepresentations and omissions when he decided to purchase and use BASF's products.

83.     Plaintiff's reliance on BASF's fraudulent misrepresentations and omissions caused him harm because he used the products exposing him to benzene and hexavalent chromium and causing his lung cancer.

84.     Sherwin-Williams intentionally used hexavalent chromium in its hexavalent

Case ID: 240801938

chromium containing products.

85.     Sherwin-Williams intentionally used benzene-containing solvents as ingredients in its benzene-containing products.

86.     Sherwin-Williams knew that hexavalent chromium causes cancer at the time it used hexavalent chromium in its hexavalent-chromium containing products.

87.     Sherwin-Williams knew that benzene causes blood diseases and cancer at the time it used benzene-containing solvents as ingredients in its benzene-containing products.

88.     Sherwin-Williams subjectively appreciated that the presence of a carcinogen in a product and exposure to carcinogen from a product was material information that a product user would consider when determining whether to purchase and use a product.

89.     Sherwin-Williams subjectively knew and intended that users would rely upon the lack of warning, disclosure or marketing of the presence of a carcinogen in its products when deciding to purchase and use those products.

90.     Sherwin-Williams intentionally and knowingly withheld its knowledge and information that there was benzene and hexavalent chromium in its products and that benzene and hexavalent chromium cause cancer when it labeled, wrote warnings and marketed the products because it knew that so doing with induce users to purchase and use the products.

91.     Sherwin-Williams affirmatively misrepresented that its products did not contain benzene or hexavalent chromium and that they did not pose a cancer hazard when it labeled, wrote warnings and marketed the products.

92.     Plaintiff relied on Sherwin-Williams's fraudulent misrepresentations and omissions when he decided to purchase and use Sherwin-Williams s products.

93.     Plaintiff's reliance on Sherwin-Williams's fraudulent misrepresentations and

Case ID: 240801938

omissions caused him harm because he used the products exposing him to benzene and hexavalent chromium and causing his lung cancer.

94.    PPG intentionally used hexavalent chromium in its hexavalent chromium containing products.

95.    PPG intentionally used benzene-containing solvents as ingredients in its benzene-containing products.

96.    PPG knew that hexavalent chromium causes cancer at the time it used hexavalent chromium in its hexavalent-chromium containing products.

97.    PPG knew that benzene causes blood diseases and cancer at the time it used benzene-containing solvents as ingredients in its benzene-containing products.

98.    PPG subjectively appreciated that the presence of a carcinogen in a product and exposure to carcinogen from a product was material information that a product user would consider when determining whether to purchase and use a product.

99.    PPG subjectively knew and intended that users would rely upon the lack of warning, disclosure or marketing of the presence of a carcinogen in its products when deciding to purchase and use those products.

100.    PPG intentionally and knowingly withheld its knowledge and information that there was benzene and hexavalent chromium in its products and that benzene and hexavalent chromium cause cancer when it labeled, wrote warnings and marketed the products because it knew that so doing with induce users to purchase and use the products.

101.    PPG affirmatively misrepresented that its products did not contain benzene or hexavalent chromium and that they did not pose a cancer hazard when it labeled, wrote warnings and marketed the products.

Case ID: 240801938

102.     Plaintiff relied on PPG's fraudulent misrepresentations and omissions when he decided to purchase and use PPG s products.

103.     Plaintiff's reliance on PPG's fraudulent misrepresentations and omissions caused him harm because he used the products exposing him to benzene and hexavalent chromium and causing his lung cancer.

104.     Sunoco intentionally sold benzene-containing solvents.

105.     Sunoco knew that benzene causes blood diseases and cancer at the time it used benzene-containing solvents as ingredients in its benzene-containing products.

106.     Sunoco subjectively appreciated that the presence of a carcinogen in a product and exposure to carcinogen from a product was material information that a product user would consider when determining whether to purchase and use a product.

107.     Sunoco subjectively knew and intended that users would rely upon the lack of warning, disclosure or marketing of the presence of a carcinogen in its products when deciding to purchase and use those products.

108.     Sunoco intentionally and knowingly withheld its knowledge and information that there was benzene in its products and that benzene causes cancer when it labeled, wrote warnings and marketed the products because it knew that so doing with induce users to purchase and use the products.

109.     Sunoco affirmatively misrepresented that its products did not contain benzene and that they did not pose a cancer hazard when it labeled, wrote warnings and marketed the products.

110.     Plaintiff relied on Sunoco's fraudulent misrepresentations and omissions when he decided to purchase and use the products.

111.     Plaintiff's reliance on Sunoco's fraudulent misrepresentations and omissions

34

Case ID: 240801938

caused him harm because he used the products exposing him to benzene and causing his lung cancer.

112.     Ashland intentionally sold benzene-containing solvents.

113.     Ashland knew that benzene causes blood diseases and cancer at the time it used benzene-containing solvents as ingredients in its benzene-containing products.

114.     Ashland subjectively appreciated that the presence of a carcinogen in a product and exposure to carcinogen from a product was material information that a product user would consider when determining whether to purchase and use a product.

115.     Ashland subjectively knew and intended that users would rely upon the lack of warning, disclosure or marketing of the presence of a carcinogen in its products when deciding to purchase and use those products.

116.     Ashland intentionally and knowingly withheld its knowledge and information that there was benzene in its products and that benzene causes cancer when it labeled, wrote warnings and marketed the products because it knew that so doing with induce users to purchase and use the products.

117.     Ashland affirmatively misrepresented that its products did not contain benzene and that they did not pose a cancer hazard when it labeled, wrote warnings and marketed the products.

118.     Plaintiff relied on Ashland's fraudulent misrepresentations and omissions when he decided to purchase and use the products.

119.     Plaintiff's reliance on Ashland's fraudulent misrepresentations and omissions caused him harm because he used the products exposing him to benzene and causing his lung cancer.

120.     Unocal intentionally sold benzene-containing solvents.

Case ID: 240801938

121.    Unocal knew that benzene causes blood diseases and cancer at the time it used benzene-containing solvents as ingredients in its benzene-containing products.

122.    Unocal subjectively appreciated that the presence of a carcinogen in a product and exposure to carcinogen from a product was material information that a product user would consider when determining whether to purchase and use a product.

123.    Unocal subjectively knew and intended that users would rely upon the lack of warning, disclosure or marketing of the presence of a carcinogen in its products when deciding to purchase and use those products.

124.    Unocal intentionally and knowingly withheld its knowledge and information that there was benzene in its products and that benzene causes cancer when it labeled, wrote warnings and marketed the products because it knew that so doing with induce users to purchase and use the products.

125.    Unocal affirmatively misrepresented that its products did not contain benzene and that they did not pose a cancer hazard when it labeled, wrote warnings and marketed the products.

126.    Plaintiff relied on Unocal's fraudulent misrepresentations and omissions when he decided to purchase and use the products.

127.    Plaintiff's reliance on Unocal's fraudulent misrepresentations and omissions caused him harm because he used the products exposing him to benzene and causing his lung cancer.

128.    Shell intentionally sold benzene-containing solvents.

129.    Shell knew that benzene causes blood diseases and cancer at the time it used benzene-containing solvents as ingredients in its benzene-containing products.

130.    Shell subjectively appreciated that the presence of a carcinogen in a product and

36

exposure to carcinogen from a product was material information that a product user would consider when determining whether to purchase and use a product.

131. Shell subjectively knew and intended that users would rely upon the lack of warning, disclosure or marketing of the presence of a carcinogen in its products when deciding to purchase and use those products.

132. Shell intentionally and knowingly withheld its knowledge and information that there was benzene in its products and that benzene causes cancer when it labeled, wrote warnings and marketed the products because it knew that so doing with induce users to purchase and use the products.

133. Shell affirmatively misrepresented that its products did not contain benzene and that they did not pose a cancer hazard when it labeled, wrote warnings and marketed the products.

134. Plaintiff relied on Shell's fraudulent misrepresentations and omissions when he decided to purchase and use the products.

135. Plaintiff's reliance on Shell's fraudulent misrepresentations and omissions caused him harm because he used the products exposing him to benzene and causing his lung cancer.

136. ARCO intentionally sold benzene-containing solvents.

137. ARCO knew that benzene causes blood diseases and cancer at the time it used benzene-containing solvents as ingredients in its benzene-containing products.

138. ARCO subjectively appreciated that the presence of a carcinogen in a product and exposure to carcinogen from a product was material information that a product user would consider when determining whether to purchase and use a product.

139. ARCO subjectively knew and intended that users would rely upon the lack of warning, disclosure or marketing of the presence of a carcinogen in its products when deciding to

37

purchase and use those products.

140.     ARCO intentionally and knowingly withheld its knowledge and information that there was benzene in its products and that benzene causes cancer when it labeled, wrote warnings and marketed the products because it knew that so doing with induce users to purchase and use the products.

141.     ARCO affirmatively misrepresented that its products did not contain benzene and that they did not pose a cancer hazard when it labeled, wrote warnings and marketed the products.

142.     Plaintiff relied on ARCO's fraudulent misrepresentations and omissions when he decided to purchase and use the products.

143.     Plaintiff's reliance on ARCO's fraudulent misrepresentations and omissions caused him harm because he used the products exposing him to benzene and causing his lung cancer.

144.     Sunoco knew by no later than 1948 that benzene causes leukemia by virtue of its membership in the American Petroleum Institute and receipt of the 1948 Toxicological Review on Benzene.

145.     Shell knew by no later than 1948 that benzene causes leukemia by virtue of its consulting with physicians, including M.H. Soley from the University of California Medical School who reported to Shell in 1943 that leukemia occurs as the result of benzene exposure, and its membership in the American Petroleum Institute and receipt of the 1948 Toxicological Review on Benzene, and by virtue of one of its medical doctors authoring this document.

146.     By 1950, C.H. Hine, M.D., a consulting toxicologist reported in an internal Shell memorandum that benzene was one of the few compounds with established carcinogenic qualities that the origin of environmental cancer can be traced to.

147.     Defendant Ashland LLC knew by no later than 1948 that benzene causes leukemia

Case ID: 240801938

by virtue of its membership in the American Petroleum Institute and receipt, or availability to them, of the 1948 Toxicological Review on Benzene.

148.    Defendant Unocal knew by no later than 1948 that benzene causes leukemia by virtue of their membership in the American Petroleum Institute and receipt, or availability to them, of the 1948 Toxicological Review on Benzene.

149.    Defendants, directly and through their membership in trade organizations, hired medical professionals to submit misleading information, statements and opinions to the United States Occupational Safety and Health Administration in order to prevent the reduction of benzene exposure levels in the workplace and the benzene content of products, such as those the Plaintiff was exposed to. Delays in the reduction of the Permissible Exposure Levels for benzene in the workplace resulted in numerous unnecessary deaths from benzene exposure.

150.    Defendants, have conducted or hired others to conduct studies on the amount of benzene exposure caused by their products that have manipulated the data and circumstances of the studies so as to give the false impression that their products do not present a benzene exposure hazard, knowing that the United States government and others would rely on these studies when making decisions with respect to worker benzene exposures.

151.    Defendants intentionally, and with intent to defraud the Plaintiff and others similarly situated by concealing a material fact known to the defendants, did not disclose that their products would expose the product user and those around the user to a chemical, to wit benzene, which was known to cause MDS, leukemia, cancer, and severe and potentially fatal damage and illness to the blood forming system. By concealing the risk of leukemia and damage to the blood forming system from the Plaintiff, defendants deprived the Plaintiff of his right to know toxic contents of the defendants' products, his right to control his health and his right to protect himself

39

Case ID: 240801938

from exposure to toxic chemicals, including by not using the products at all.

152. Defendants knew that their products would expose the Plaintiff, and others similarly situated, to benzene, and that this exposure would place the Plaintiff at an increased risk of contracting cancer, leukemia, and death. Despite this knowledge, the defendants acted in conscious disregard of the rights, safety, and health of those working with and around their products, including the Plaintiff.

153. The conduct of defendants, jointly and severally as described above was willful, wanton, knowing, purposeful and intentional, as were their failures and/or omissions, as it related to Plaintiff, and were of such degree and magnitude that they rose to the level of conduct exhibiting a reckless indifference to the health, safety, rights and welfare of Plaintiff.

154. With this knowledge, Defendants opted to manufacture and distribute said carcinogen-containing products without attempting to protect users from, or warn users of, the high risk of injury or death resulting from exposure to said benzene and benzene-containing solvents. Rather than attempting to protect users from, or warn users of, the high risk of injury or death resulting from exposure to said benzene and benzene-containing solvents, said defendants intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from members of the general public, thus impliedly representing to members of the general public that said benzene and benzene-containing solvents were safe for all reasonably foreseeable use, with the knowledge of the falsity of said implied representation, and with knowledge, intent and/or reasonable expectation that the product users would rely upon their representations.

155. The above referenced conduct of Defendants was motivated by the financial interest of said defendants in the continuing, uninterrupted distribution and marketing of said benzene and

Case ID: 240801938

benzene-containing solvents. In pursuance of said financial motivation, said defendants consciously disregarded the safety of the users of said benzene and benzene-containing solvents, and were, in fact, consciously willing to permit said carcinogen-containing products to cause injury to users therefore, including Plaintiff.

156.    The above-mentioned conduct of Defendants was and is willful, malicious, outrageous, and in conscious disregard and indifference to the safety of users of said carcinogen-containing products, including Plaintiff. Plaintiff therefore, for the sake of example and by way of punishing said defendants, seeks punitive damages, according to proof.

157.    Plaintiff and others around him relied upon the fraudulent representations, misrepresentations and omissions made by the Defendants and did so to the Plaintiff's detriment causing him harmful benzene exposure and injury.

158.    As the direct and proximate result of the aforesaid acts and omissions, Plaintiff contracted and suffered from MDS and Lung Cancer, and multiple side effects, conditions, illnesses and symptoms caused by MDS and Lung Cancer and the medical treatments necessitated thereby, which caused him pain, suffering, disability, disfigurement, deformity, impairment, mental anguish, anxiety, humiliation, and increased susceptibility to infection, and directly and proximately caused his death.

159.    As the direct and proximate of the aforesaid acts and omissions, Plaintiff was prevented from engaging in those activities from which he derived life's pleasures.

160.    As the direct and proximate of the aforesaid acts and omissions, Plaintiff has in the past, continues to and in the future will suffer economic loss.

161.    As the direct and proximate result of the aforesaid acts and omissions, Plaintiff was required to spend various sums of money for medical treatments, hospitalizations and medicines,

Case ID: 240801938

to treat Plaintiff's disease and injuries, and has incurred additional economic expenses and losses.

WHEREFORE, for all of the foregoing reasons, Plaintiffs pray for judgment from Defendants, individually, jointly and severally in an amount in excess of fifty thousand dollars, ($50,000), together with such other and further relief as this Court deems just and appropriate, under the circumstances, including punitive damages, costs, interest, and delay damages.

## COUNT V - WRONGFUL DEATH

162.    Plaintiffs hereby adopt and incorporate by reference each and every statement and averment contained in each of the foregoing paragraphs, as if each of said paragraphs were set forth herein with particularity.

163.    The intestate beneficiaries of Donald Raymond, Sr.'s estate and their addresses are:

**Tammy Lockett**
2000 Carondelet Street
New Orleans, LA 70130

**Datoya (Lockett) Graves**
39523 Fly Creek Road
Ponchatoula, LA 70454

**Donald Raymond Jr.**
17311 Emerald Isle Dr
Houston, TX 77095-4401

**Donna Calvey**
1327 Divine Rose Way
Wylie, TX 75098-0930

**Deadra Raymond**
7034 Westford Park Ln A
Richmond, TX 77407-7847

**Desmond Raymond**
3001 Ponce De Leon St
New Orleans, LA 70119-3050

Case ID: 240801938

164.     Said individuals, by reason of the death of the Decedent, have suffered financial losses including financial support and gifts provided by the Decedent as well as expenses of administration of the Estate including funeral expenses.

165.     Said individuals have suffered the loss of Decedent's support, society, comfort, love, companionship, friendship, support, consortium, parental guidance and tutelage.

166.     Said individuals have suffered the loss of the Decedent's financial and other support, services and companionship.

167.     Decedent did not bring any action for personal injury during his lifetime against the Defendants which was ever terminated, and no other action for death of the Decedent has been commenced against the Defendants. The Plaintiffs, therefore, bring this action under 42 Pa. C.S. §8301 (substantially a reenactment of act of April 15, 1851 (P.L. 669), § 19 (12 P.S. § 1601), act of April 26, 1855 (P.L. 309), § 1 (12 P.S. § 1602) and act of May 13, 1927 (P.L. 992) (No. 480), § 1 (12 P.S. § 1604), and Pennsylvania Rule of Civil Procedure 2202(a).

168.     Plaintiffs are entitled to recover, in addition to other damages, amounts for reasonable funeral and associated expenses and expenses of administration necessitated by reason of the wrongful conduct, and aforedescribed wrongful conduct which caused the death of the Decedent.

## COUNT VI – SURVIVAL ACT

169.     Plaintiffs hereby adopt and incorporate by reference each and every statement and averment contained in the foregoing paragraphs, as if each of said paragraphs were set forth herein with particularity.

170.     Plaintiffs bring this action on behalf of the Estate of Donald Raymond, Sr., Deceased, under 42 Pa. C.S. §8302, and 20 Pa. C.S. §§3371 - 3373 (Act of 1972, June 30, P.L.

Case ID: 240801938

508, No. 164, § 2, eff. July 1, 1972, as amended).

171.    Plaintiffs claim on behalf of said Estate damages suffered by the reason of the personal injury and death of Decedent, including but not limited to pain and suffering and loss of life's pleasures of the Decedent prior to his death, as more fully described above and expressly incorporated herein.

172.    Plaintiffs claim on behalf of said Estate the lost future income, benefits and emoluments of the Decedent, who was approximately 76 years old at the time of his death.

WHEREFORE, Plaintiffs prays for judgment in their favor and against the Defendants, jointly and/or severally, in amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), together with such other and further relief as this Court deems just and appropriate under the circumstances including compensatory damages, interest, costs and delay damages.

Respectfully submitted,

**LOCKS LAW FIRM**

**DATED: October 31, 2024**          **By:**     /s/ Andrew J. DuPont
                                                **ANDREW J. DUPONT, ESQUIRE**
                                                **Attorney for Plaintiffs**

Case ID: 240801938

## **VERIFICATION**

Tammy Lockett, as beneficiary and Personal Representative of the Estate of Donald Raymond, Sr., Plaintiff above, being duly sworn according to law, do depose and state that the allegations in the enclosed Civil Action Complaint are true and correct to the best of our knowledge, information and belief. We realize that this verification is taken pursuant to 42 Pa. C.S.A Section 4904, relating to unsworn falsification to authorities.

DATED: _____
10 / 30 / 2024

_____
TAMMY LOCKETT