**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TAMMY LOCKETT, as Beneficiary and Personal Representative of the Estate of Donald Raymond, Sr. | Civil Action No.: 2:24-cv-05876-TJS |
| *Plaintiff*, | |
| v. | |
| E.I. DU PONT DE NEMOURS AND COMPANY, et al. | |
| *Defendants*. | |

---

**MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANT ASHLAND INC.'S**
**MOTION TO DISMISS**

---

Steven M. Lucks
Andrew P. Fishkin
FISHKIN LUCKS LLP
One Gateway Center, Suite 1150
Newark, NJ 07102
(973) 536-2800
slucks@fishkinlucks.com
afishkin@fishkinlucks.com

Matthew C. Cairone
Nicolai A. Schurko
FISHKIN LUCKS LLP
1900 Market Street, 8th Floor
Philadelphia, PA 19103
(267) 627-1234
mcairone@fishkinlucks.com
nschurko@fishkinlucks.com

*Attorneys for Defendant Ashland Inc.*

# **Table of Contents**

**Page**

I.      FACTS ................................................................................................. 1

II.     LEGAL STANDARD......................................................................... 2

ARGUMENT ................................................................................................. 3

III.    THIS COURT LACKS GENERAL JURISDICTION OVER ASHLAND .......... 3

    A.    Pennsylvania May Not Exercise General Personal Jurisdiction Over Ashland Based on Its Alleged "Continuous and Systematic" Contacts with the Commonwealth Because Ashland Is Neither Incorporated nor Headquartered There ........................................ 4

    B.    Ashland Is Not Subject to General Jurisdiction Based on the Citizenship of Its Alleged "Unit Holders" ................................... 6

    C.    This Court May Not Exercise Personal Jurisdiction Over Ashland Based on its Registration to Do Business in the Commonwealth.............. 7

        i.    Mallory I ...................................................................... 7

        ii.   Mallory II ..................................................................... 8

        iii.  *Mallory II* Does Not Establish the Constitutionality of Registration-Based Jurisdiction, Which Is Unconstitutional on Grounds Other Than Those Considered by the United States Supreme Court ................................................... 10

        iv.   Exercising Jurisdiction Over Ashland Based on Its Registration to Do Business Violates the Commerce Clause ....... 11

            1.    Pennsylvania's Statutory Scheme Violates the Commerce Clause by Discriminating Against Out-of-State Entities............................................ 12

            2.    Pennsylvania's Statutory Scheme Violates the Commerce Clause by Imposing an Undue and Impermissible Burden on Interstate Commerce .............. 13

        v.    Jurisdiction Based on Registration Violates the Unconstitutional Conditions Doctrine ......................... 17

        vi.   The Due Process Clause, Acting as an Instrument of Interstate Federalism, Divests this Court of Personal Jurisdiction over Ashland ............................................ 19

IV.    PENNSYLVANIA MAY NOT EXERCISE SPECIFIC PERSONAL JURISDICTION OVER ASHLAND .................................................. 21

    A.    Plaintiff Fails to Establish Purposeful Availment..................... 22

i.      Pennsylvania and Third Circuit Courts Do Not Recognize the Stream-of-Commerce Theory of Purposeful Availment......... 22

ii.     Plaintiff Fails to Demonstrate Purposeful Availment.................... 24

B.     Plaintiff Cannot Show Any Connection Between Decedent's Alleged Injuries and Any Activity Conducted by Ashland in Pennsylvania ............................................................................................ 24

C.     Subjecting Ashland to Specific Personal Jurisdiction in Pennsylvania Offends Traditional Notions of Fair Play and Substantial Justice ...................................................................................... 26

D.     A Pennsylvania Trial Court Has Already Found Specific Jurisdiction Lacking Over Ashland .......................................................... 27

V.     CONCLUSION..................................................................................................... 29

<u>**Table of Authorities**</u>

<u>**Page**</u>

**Cases**

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
   570 U.S. 205 (2013) .................................................................................. 18

*Allenberg Cotton Co. v Pittman*,
   419 U.S. 20 (1974) ................................................................................... 15

*Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.*,
   480 U.S. 102 (1987) .................................................................................. 22

*Asahi Metal Indus., Ltd. v. Super. Ct. of Calif., Solano Cnty.*,
   480 U.S. 102 (1987) ................................................................................... 3

*Barth v. Walt Disney Parks & Resorts U.S., Inc.*,
   206 F. Supp. 3d 1026 (E.D. Pa. 2016) ...................................................... 5

*Barton v. Portfolio Recovery Assocs., LLC*,
   No. 2:20-CV-464, 2020 WL 4340167 (W.D. Pa. July 28, 2020) .............. 7

*Bendix Autolite Corp. v. Midwesco Enters., Inc.*,
   486 U.S. 888 (1988) ....................................................................... 13, 15, 16

*BMW of N. Am., Inc. v. Gore*,
   517 U.S. 559 (1996) .................................................................................. 14

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*,
   582 U.S. 255 (2017) ........................................................................... passim

*Brown v. Lockheed Martin Corp.*,
   814 F.3d 619 (2d Cir. 2016) ...................................................................... 5

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*,
   476 U.S. 573 (1986) .................................................................................. 12

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ....................................................................... 21, 22, 23, 26

*Dahnke-Walker Milling Co. v. Bondurant*,
   257 U.S. 282 (1921) .................................................................................. 15

*Daimler AG v. Bauman*,
   *571 U.S. 117 (2014)* ......................................................................... 4, 5, 6, 7

*Darien Rowayton Bank v. McGregor*,
   668 F. Supp. 3d 324 (M.D. Pa. 2023) ....................................................... 3

*Davis v. Farmers' Co-operative Equity Co.*,
   *262 U.S. 312 (1923)* ............................................................................ 14, 15

*D'Jamoos v. Pilatus Aircraft Ltd.*,
   566 F.3d 94 (3d Cir. 2009) ............................................................. 21, 23, 26

*Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc.*,
239 F.2d 502 (4th Cir. 1956) ............................................................... 17

*Farber v. Tennant Truck Lines, Inc.*,
84 F. Supp. 3d 421 (E.D. Pa. 2015) ....................................................... 5

*Filipovich v. J.T. Imports, Inc.*,
637 A.2d 314 (Pa. Super. 1994)............................................................ 23

*Frost v. R.R. Comm'n*,
271 U.S. 583 (1926)............................................................................. 18

*Gen. Elec. Co. v. Deutz AG*,
270 F.3d 144 (3d Cir. 2001) ................................................................ 21

*Genuine Parts Co. v Cepec*,
137 A.3d 123 (Del. 2016) .................................................................... 16

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)..................................................................... passim

*Granholm v. Heald*,
544 U.S. 460 (2005)............................................................................. 12

*Green v. United States*,
355 U.S. 184 (1957)............................................................................. 18

*Hanson v. Denckla*,
357 U.S. 235 (1958)............................................................................. 20

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ................................ 22

*International Shoe Co. v. Washington*,
326 U.S. 310 (1945)......................................................................... 9, 26

*J. McIntyre Mach., Ltd. v. Nicastro*,
564 U.S. 873 (2011)............................................................................. 12

*Kachur v. Yugo America, Inc.*,
632 A.2d 1297 (Pa. 1993)................................................................... 23

*Knight v. United States Steel Corp.*,
No. 220800385 (Phila. Ct. Com. Pl.)............................................... 27, 28

*Koontz v. St. John's River Water Mgmt. Dist.*,
570 U.S. 595 (2013)............................................................................. 18

*Malik v. Cabot Oil & Gas Corp.*,
710 F. App'x 561 (3d Cir. 2017) ............................................................ 7

*Mallory v. Norfolk S. Ry. Co.*,
No. 170901961 (Pa. Ct. Com. Pl. Apr. 5, 2024)................................... 10

*Mallory v. Norfolk Southern Railway Co.*,
266 A.3d 542 (Pa. 2021) ............................................................... passim

iv

*Mallory v. Norfolk Southern Railway Co.*,
   600 U.S. 122 (2023) ..................................................................................... passim

*Mellon Bank PSFS, Nat'l Ass'n v. Farino*,
   960 F.2d 1217 (3d Cir.1992) ................................................................................ 2

*Miller Yacht Sales, Inc. v. Smith*,
   384 F.3d 93 (3d Cir. 2004) .................................................................................. 2

*New Energy Co. of Ind. v. Limbach*,
   486 U.S. 269 (1988) ........................................................................................... 12

*Nollan v. Cal. Coastal Comm'n*,
   483 U.S. 825 (1987) ...................................................................................... 18, 19

*O'Connor v. Sandy Lane Hotel Co.*,
   496 F.3d 312 (3d Cir. 2007) ........................................................................ passim

*Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.*,
   243 U.S. 93 (1917) .......................................................................................... 8, 20

*Perkins v. Benguet Consol. Mining Co.*,
   342 U.S. 437 (1952) ............................................................................................. 4

*Perry v. Sindermann*,
   408 U.S. 593 (1972) ........................................................................................... 18

*Pike v. Bruce Church, Inc.*,
   397 U.S. 137 (1970) ........................................................................................... 12

*Pinker v. Roche Holdings Ltd.*,
   292 F.3d 361 (3d Cir. 2002) .............................................................................. 22

*Portella v. Life-Time Truck Prods., Inc.*,
   127 F. Supp. 2d 652 (E.D. Pa. 2000) ................................................................. 26

*Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,*
   819 F.2d 434 (3d Cir.1987) .......................................................................... 2, 22

*Raymond Motor Transp., Inc. v. Rice*,
   434 U.S. 429 (1978) ........................................................................................... 11

*Rosso-Gana v. McDonald's Restaurant*,
   No. 2:15-cv-2016, 2015 WL 3444317 (E.D. Pa. May 28, 2015) ......................... 27

*S. Dakota v. Wayfair, Inc.*,
   858 U.S. 162 (2018) ..................................................................................... 12, 13

*Shuker v. Smith & Nephew, PLC*,
   885 F.3d 760 (3d Cir. 2018) ........................................................................ 23, 24

*Speiser v. Randall*,
   357 U.S. 513 (1958) ........................................................................................... 18

*Stampone v. Fopma*,
   567 F. App'x 69 (3d Cir. 2014) ........................................................................... 3

*Tennessee Wine & Spirits Retailers Ass'n v. Thomas*,
    588 U.S. 504 (2019)................................................................................ 9, 11

*Terral v. Burke Const. Co.*,
    257 U.S. 529 (1922)..................................................................................... 18

*Time Share Vacation Club v. Atl. Resorts, Ltd.*,
    735 F.2d 61 (3d Cir. 1984) ........................................................................ 3, 21

*TorcUP, Inc. v. Aztec Bolting Servs., Inc.*,
    386 F. Supp. 3d 520 (E.D. Pa. 2019) ............................................................ 25

*Weinmann v. Cont. Land Staff, LLC*,
    No. 2:22-cv-01140, 2023 WL 3881394 (W.D. Pa. June 8, 2023) ........................... 7

*World Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)......................................................... 20, 22, 23, 26

**Statutes**

15 Pa. C.S. § 411 ......................................................................................... 7, 10

42 Pa. C.S. § 5301(a)(2)(i)........................................................................ 3, 7, 11

42 Pa. C.S. § 5301(a)(2)(ii)........................................................................... 3, 19

42 Pa. C.S. § 5301(a)(2)(iii).......................................................................... 3, 4

42 Pa. C.S. § 5301(a)(ii) .................................................................................. 11

42 Pa. C.S. § 5322(b)........................................................................................ 3

**Other Authorities**

John Preis, *The Dormant Commerce Clause as a Limit on Personal Jurisdiction*,
    102 Iowa L. Rev. 121 (2016)........................................................... 13, 17

Mark P. Gergen, *Constitutional Limitations on State Long Arm Jurisdiction*,
    49 U. Chi. L. Rev. 156, 174 (1982) ............................................................ 16

Richard A. Epstein, *Unconstitutional Conditions, State Power, and the Limits of Consent*,
    102 Harv. L. Rev. 4 (1988).......................................................................... 18

T. Griffin Vincent, *Toward A Better Analysis for General Jurisdiction Based on Appointment of Corporate Agents*,
    41 Baylor L. Rev. 461 (1989)..................................................................... 16

Tanya J. Monestier, *Registration Statutes, General Jurisdiction, and the Fallacy of Consent*,
    36 Cardozo L. Rev. 1343 (2015) ............................................................... 19

**Rules**

Fed. R. Civ. P. 12(b)(2)............................................................................... 1, 21

Fed. R. Civ. P. 4(k) ........................................................................................ 3

Local Rule 7.1 ................................................................................................. 1

vi

Pursuant to Federal Rule of Civil Procedure 12(b)(2) and Local Rule 7.1, defendant Ashland Inc., incorrectly named as Ashland LLC, respectfully submits this memorandum of law in support of its motion to dismiss plaintiff Tammy Lockett's complaint.

Plaintiff is expected to argue that pursuant to *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122 (2023), this court may exercise general jurisdiction over Ashland based on its registration to do business. That argument ignores an argument that the *Mallory* Court itself expressly declined to reach: whether general jurisdiction premised on business registration violates the Commerce Clause of Article I of the United States Constitution. As demonstrated below, registration-based jurisdiction indeed runs afoul of the Commerce Clause. It also violates the unconstitutional conditions doctrine as well as the Fourteenth Amendment's due process protections of interstate federalism. For these reasons, general jurisdiction over Ashland based on its business registration is unconstitutional.

Nor can this court exercise specific jurisdiction over Ashland. Plaintiff bears the burden of pleading, with reasonable particularity, specific facts demonstrating that her claims arise out of or relate to Ashland's connections with this forum. She has utterly failed to do so—nor can she do so. Indeed, on materially indistinguishable facts, the Pennsylvania Court of Common Pleas has already found that specific jurisdiction is lacking over Ashland.

For these reasons, Ashland is entitled to dismissal of Plaintiff's complaint.

## I.    FACTS

Plaintiff, a resident of New Orleans, Louisiana, brings this action, alleging that the decedent, Donald Raymond ("Decedent"), contracted lung cancer while working as an automotive painter as a result of his exposure to certain chemicals in products placed into the stream of commerce by the collective defendants. (Pl.'s Compl. ¶ 5) (ECF No. 1-1). Plaintiff does not allege that Decedent ever lived or worked in Pennsylvania, nor do they allege that he was ever exposed to any

defendant's product in Pennsylvania. An obituary for Decedent published in the New Orleans Times-Picayune describes him as a "life-long resident of New Orleans." (*See* Ex. 1).

Ashland is alleged to be a "Kentucky … business entity having its principal place of business" in Kentucky, which "continuously, regularly, and systematically conducts business" in this Commonwealth. (*Id.* ¶ 11(f)).  Plaintiff alleges that Ashland consented to general personal jurisdiction in Pennsylvania by registering to do business. (*Id.*). She also contends that Ashland is subject to general personal jurisdiction "because at least one of its unit holders is a citizen of Pennsylvania and a limited liability company and a limited liability company is a citizen of each state that its unit holders are citizens of."  (*Id*.)

Plaintiff alleges that Ashland is subject to specific personal jurisdiction "because it supplied" allegedly defective "benzene-containing products to co-Defendants PPG and Dupont in Pennsylvania," which "were incorporated into the co-Defendant's benzene-containing products when they were manufactured in Pennsylvania which constituted tortious conduct creating the causal connection between Defendant and the Plaintiff in Pennsylvania."

## II.    LEGAL STANDARD

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93 (3d Cir. 2004)

"When a defendant raises the defense of the court's lack of personal jurisdiction, the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper." *Mellon Bank PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992). To meet this burden, the plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987). The plaintiff must establish these "jurisdictional facts through

sworn affidavits or other competent evidence." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n. 9 (3d Cir. 1984). A federal district court "typically exercises personal jurisdiction according to the law of the state where it sits." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007); *see also* Fed. R. Civ. P. 4(k). The Pennsylvania long-arm statute "provides for jurisdiction 'based on the most minimum contacts with th[e] Commonwealth allowed under the Constitute of the United States.'" *Id.* (quoting 42 Pa. C.S. § 5322(b)). "Consequently, the reach of this Court's personal jurisdiction … is coextensive with the due process clause of the Fourteenth Amendment to the United States Constitution." *Darien Rowayton Bank v. McGregor*, 668 F. Supp. 3d 324, 329 (M.D. Pa. 2023).

The United States Supreme Court recognizes two types of personal jurisdiction. A defendant is subject to *general jurisdiction* in the place "where it is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). "*Specific jurisdiction* exists 'when the claim arises from or relates to conduct purposely directed at the forum state.'" *Stampone v. Fopma*, 567 F. App'x 69, 70 (3d Cir. 2014) (quoting *Asahi Metal Indus., Ltd. v. Super. Ct. of Calif., Solano Cnty.*, 480 U.S. 102, 109 (1987)).

## ARGUMENT

## III. THIS COURT LACKS GENERAL JURISDICTION OVER ASHLAND

The Pennsylvania long-arm statute provides that general personal jurisdiction may be exercised over foreign corporations where the corporation has (1) "carr[ied] on a continuous and systematic part of its general business" in Pennsylvania," 42 Pa. C.S. § 5301(a)(2)(iii); (2) incorporated under or qualified as a foreign corporation under Pennsylvania law, 42 Pa. C.S. § 5301(a)(2)(i); or (3) consented to the exercise of such jurisdiction, 42 Pa. C.S. § 5301(a)(2)(ii). Here, as set forth below, Pennsylvania's exercise of general jurisdiction over Ashland based on any of the three subsections of the long arm statute would be unconstitutional.

**A. Pennsylvania May Not Exercise General Personal Jurisdiction Over Ashland Based on Its Alleged "Continuous and Systematic" Contacts with the Commonwealth Because Ashland Is Neither Incorporated nor Headquartered There**

Plaintiff makes a conclusory allegation that Ashland "continuously, regularly and systematically conducts business" in Pennsylvania, and alleges that all defendants "conduct … a part of [their] general business" in Pennsylvania, suggesting that she contends that general jurisdiction is proper under 42 Pa. C.S. § 5301(a)(2)(iii). (Pl.'s Compl. ¶¶ 1, 11(f)) (ECF No. 1-1). Even accepting *arguendo* Plaintiff's conclusory and unsupported assertion, she has nevertheless failed to establish a *prima facie* case supporting general jurisdiction over Ashland.

In *Goodyear*, the United States Supreme Court held that the exercise of general jurisdiction based on a foreign corporation's contacts with the forum state is constitutional *only* where the foreign corporation's "affiliations with the State" are "so 'continuous and systematic' as to render [it] *essentially at home* in the forum state." 564 U.S. at 919 (emphasis added).

The *Daimler* Court reaffirmed and clarified *Goodyear's* "essentially at home" test, explaining that the "place of incorporation and principal place of business" are the "paradigm[] … bases for general jurisdiction" over a foreign corporation. *Id.* at 137. Where a corporation is neither incorporated nor has its principal place of business in the forum, jurisdiction should *only* be exercised in the most "*exceptional*" circumstances. *Id.* at 139 n.19 (emphasis added) (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)). The *Daimler* Court offered *Perkins* as an example of such "exceptional facts." *Daimler AG v. Bauman*, 571 U.S. 117, 130 n. 8 (2014). There, a Filipino corporation temporarily relocated its principal place of business from the Philippines to Ohio as a result of the Japanese occupation of the Philippines during World War II. *Id.* (discussing *Perkins*). The Court explained that, based on the "wartime circumstances" and the

"exceptional facts," Ohio's exercise of personal jurisdiction did not offend due process because Ohio "could be considered a surrogate for the place of incorporation or head office." *Id.*

The Supreme Court's decisions in *Daimler* and *Goodyear* "fundamentally undermined" the previously existing "continuous and systematic" analysis by clarifying that general jurisdiction is proper *only* where a defendant's contacts are *so* continuous and systematic as to render it essentially at home. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255 (2017) ("[O]nly a limited only a limited set of affiliations with a forum"—*i.e.*, incorporation in the state, or maintaining its principal place of business there—"will render a defendant amenable to general jurisdiction in that State."); *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016) ("when a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case.'"); *Farber v. Tennant Truck Lines, Inc.*, 84 F. Supp. 3d 421, 431 (E.D. Pa. 2015) ("[T]he unadorned 'continuous and systematic' contacts standard for determining general jurisdiction" under Pennsylvania's long-arm statute "is no longer viable in light of … *Goodyear* and *Daimler*'s more stringent 'essentially at home' standard"); *Barth v. Walt Disney Parks & Resorts U.S., Inc.*, 206 F. Supp. 3d 1026, 1031-32 (E.D. Pa. 2016) ("The allegation that an entity transacts business, even substantial business, in Pennsylvania is insufficient to establish that it is essentially 'at home' in Pennsylvania." (citing cases)).

Plaintiff does not—and cannot—allege that Ashland is "essentially at home" in Pennsylvania because, as she concedes, Ashland is neither incorporated nor headquartered in Pennsylvania. (Pl.'s Compl. ¶ 11(f)) (ECF No. 1-1). Thus, neither of the "paradigm" contacts supporting the assertion of general personal jurisdiction exists. Plaintiff's allegation that Ashland

"continuously, regularly, and systematically conducts business" in Pennsylvania is a rote repetition of the old test that the *Goodyear* Court rejected; that the *Daimler* Court, in reaffirming *Goodyear*, described as "unacceptably grasping," 571 U.S. at 138.

### B.    Ashland Is Not Subject to General Jurisdiction Based on the Citizenship of Its Alleged "Unit Holders"

This court may readily dispose of Plaintiff's allegation that general personal jurisdiction over Ashland is warranted because, as she claims, "at least one of its unit holders"—she never identifies a single such unit holder—"is a citizen of Pennsylvania." (Pl.'s Compl. ¶ 11(f)) (ECF No. 1-1).  As a threshold matter, Ashland is not, in fact, a limited liability company. It is a corporation, and it is axiomatic that "with respect to a corporation, the place of incorporation and principal place of business are paradig[m] … bases for general jurisdiction." *Daimler*, 571 U.S. at 137.  And, as set forth above, Plaintiff certainly alleges no facts that would support even an inference that this is the "exceptional" case in which Ashland's contacts with this forum are so continuous and systematic as to render it essentially at home.

Even if Plaintiff were correct that Ashland is organized as a limited liability company, her argument would nevertheless fail.  Plaintiff appears to conflate the requirements for establishing diversity of citizenship with the test for general jurisdiction.  While it may be true that, for purposes of establishing diversity jurisdiction, a limited liability company takes the citizenship of its each of its members, it does not follow that the same company is subject to general personal jurisdiction in every jurisdiction where one of its members is domiciled.

The *Daimler* court held that, absent "exceptional" circumstances, a corporation is only "at home" in the states in which it is incorporated and in which it has its principal place of business. 517 U.S. at 137, 139 n. 19. That holding "appl[ies] equally to corporations *and LLCs*." *Barton v. Portfolio Recovery Assocs., LLC*, No. 2:20-CV-464, 2020 WL 4340167, at *2, n. 2 (W.D. Pa. July

28, 2020) (emphasis added) (also noting that "one of the entities at issue in *Daimler* was an LLC");
*see also Weinmann v. Cont. Land Staff, LLC*, No. 2:22-cv-01140, 2023 WL 3881394, at *5 (W.D.
Pa. June 8, 2023) ("For the purposes of general personal jurisdiction, a limited liability company's
citizenship is that of its principal place of business and state of incorporation.") (internal quotations
omitted; alterations omitted)); *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 564 n. 5 (3d
Cir. 2017) (affirming dismissal where general jurisdiction was lacking because defendant limited
liability company was a Texas LLC with its principal place of business in Houston, Texas)

### C. This Court May Not Exercise Personal Jurisdiction Over Ashland Based on its Registration to Do Business in the Commonwealth

#### i. Mallory I

In the wake of *Goodyear* and *Daimler*'s effective elimination of the "continuous and
systematic" test, plaintiffs increasingly looked to a foreign defendant's registration to do business
as a basis for general personal jurisdiction. 15 Pa. C.S. Sec. 411 compels foreign corporations to
register with the Secretary of State before doing *any* business in Pennsylvania, and 42 Pa. C.S.
Sec. 5301 (a)(2)(i) then deems that registration to be a sufficient basis for the exercise of general
jurisdiction over them.

In December 2021, the Pennsylvania Supreme Court decided *Mallory v. Norfolk Southern
Railway Co.*, 266 A.3d 542 (Pa. 2021) ("*Mallory I*"), holding that general jurisdiction based on a
foreign defendant's registration to do business was "unconstitutional to the extent that it affords
Pennsylvania courts general jurisdiction over foreign corporations that," like Ashland, "are not at
home in the Commonwealth." *Id.* at 571. The Court held that Pennsylvania's statutory scheme
"fail[ed] to comport with the [due process] guarantees of the Fourteenth Amendment; thus, it
clearly, palpably, and plainly violate[d] the Constitution." *Id.* at 569. Moreover, the statutory
scheme "impermissibly conditioned the privilege of doing business in Pennsylvania upon a foreign

corporation's surrender of its constitutional right to due process," thereby violating the unconstitutional conditions doctrine, as well as the "doctrine of federalism." *Mallory I*, 266 A.3d at 569.

### ii. Mallory II

On June 27, 2023, a fractured United States Supreme Court decided *Mallory v. Norfolk Southern Railway Co.,* 600 U.S. 122 (2023) ("*Mallory II*") on the narrowest of grounds, vacating the Pennsylvania Supreme Court's decision in *Mallory I* and remanding it to that court for further proceedings.

Over four dissenting votes, the *Mallory II* majority held that *Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917), which rejected a due process challenge to general jurisdiction based on a defendant's appointment of an agent for service of process, had not been overruled by modern personal jurisdiction cases. *Mallory II*, 600 U.S. at 134-35. And under *Pennsylvania Fire*, general jurisdiction over a foreign corporation based on its registration to do business does not violate its rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Mallory II*, 600 U.S. at 133-36. In so holding, the Court expressly left open "for consideration on remand" whether the same assertion of jurisdiction might violate the Commerce Clause. *Id.* at 137, n. 3.

Most of the *Mallory II* opinion spoke only for a four-Justice plurality, with Justice Alito providing the deciding fifth vote to the narrow majority opinion and authoring a separate opinion concurring in part and in the judgment. Justice Alito expressed serious concern about the impact of the Pennsylvania statutory scheme on interstate federalism, making clear that the Court's holding was "not the end of the story for registration-based jurisdiction." 600 U.S. at 154 (Alito, J., concurring in part and in the judgment). He acknowledged the ample precedent supporting the application of the Due Process Clause to guard against overreaches by states whose assertions of

jurisdiction impermissibly intrude on the sovereignty of other states, *id.* 154-55; noting that the Court had previously held that the "'federalism interest may be decisive' in the due process analysis. *Id.* at 156 (quoting *Bristol-Myers*, 582 U.S. at 263). But Justice Alito believed that "[t]he federalism concerns that this case presents fall more naturally within the scope of the Commerce Clause"—more specifically, within the Court's negative or "dormant Commerce Clause" jurisprudence, which "prohibits state laws that unduly restrict interstate commerce." *Id.* at 157 (citing *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 514 (2019)). And from his perspective, "there is a good prospect that Pennsylvania's assertion of jurisdiction here—over an out-of-state company in a suit brought by an out-of-state plaintiff on claims wholly unrelated to Pennsylvania—violates the Commerce Clause." *Id.* at 160 (also noting that "[t]here is reason to believe that Pennsylvania's registration-based jurisdiction law discriminates against out-of-state companies.").

The four dissenting Justices likewise did not reach the Commerce Clause issue. In their view, Pennsylvania's assertion of general jurisdiction based on a required consent was plainly inconsistent with *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny. 600 U.S. at 163-64 (Barrett, J., dissenting). The dissent was troubled by the impact of the consent-by-registration scheme not only on individual rights, but on interstate federalism. Justice Barrett observed that "[t]he Due Process Clause protects more than the rights of defendants—it also protects interstate federalism" by "ensuring that state courts 'do not reach beyond the limits imposed on them by their status as co-equal sovereigns in a federal system." *Id.* at 164. In the dissent's view, "Pennsylvania's efforts to assert general jurisdiction over every company doing business within its borders infringes on the sovereignty of its sister states in a way no less 'exorbitant' and 'grasping' than attempts [the Court] ha[s] previously rejected." *Id.* at 169.

In short, while Justice Alito and the four dissenting Justices differed on the proper procedural and constitutional framework for addressing their concerns—*i.e.* through the Commerce Clause, as Justice Alito would do, or through the Due Process Clause, as the dissent would do—five Justices agreed that Pennsylvania's statutory scheme violated principles of interstate federalism.

The United States Supreme Court remanded *Mallory* to the Pennsylvania Supreme Court, which, in turn, reversed the order of the Philadelphia Court of Common Pleas and remanded it to that court "for further proceedings."[1]

### iii.   *Mallory II* Does Not Establish the Constitutionality of Registration-Based Jurisdiction, Which Is Unconstitutional on Grounds Other Than Those Considered by the United States Supreme Court

*Mallory II* did *not* conclusively establish the constitutionality of jurisdiction premised solely on a defendant's registration to do business. Rather, the fractured *Mallory II* Court held only that a Pennsylvania court's assertion of jurisdiction based on a foreign defendant's compliance with the mandatory registration provisions of 15 Pa. C.S. Sec. 411 does not violate that defendant's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Mallory II*, 600 U.S. at 134-36.

But registration-based jurisdiction is unconstitutional and impermissible on at least three separate grounds not addressed by *Mallory II.* First, it violates the Commerce Clause of Article 1 of the United States Constitution because it discriminates against out-of-state businesses and unduly burdens interstate commerce. Second, it purports to impermissibly impose an unconstitutional condition upon foreign businesses—waiver of due process rights—in exchange

---

[1] On remand, the Court of Common Pleas denied defendant Norfolk Southern Railway Company's motion for leave to amend its preliminary objections to "specifically assert the defense that Pennsylvania courts may not exercise personal jurisdiction in this case by virtue of the dormant Commerce Clause." *Mallory v. Norfolk S. Ry. Co.*, No. 170901961 (Pa. Ct. Com. Pl. Apr. 5, 2024) (order attached hereto as Exhibit 2).

for the right to do business in Pennsylvania. And third, even though *Mallory II* holds that Ashland's individual due process rights are not violated by the Pennsylvania statutory scheme, the Due Process Clause, acting to protect interstate federalism, nevertheless divests this Court of jurisdiction because the statutory scheme impermissibly intrudes on the sovereignty of Pennsylvania's sister states. For these reasons, this Court cannot assert jurisdiction under 42 Pa. C.S. Sec. 5301(a)(2)(i) (purporting to authorize general jurisdiction based solely on registration). And as will become clear *infra*, the same reasons prevent this Court from exercising general jurisdiction over Ashland pursuant to Sec. 5301(a)(ii) on the theory that Ashland's registration operated as consent to jurisdiction.

### iv. Exercising Jurisdiction Over Ashland Based on Its Registration to Do Business Violates the Commerce Clause

For the reasons explained by Justice Alito—the controlling fifth vote in the narrow *Mallory II* majority—this Court lacks personal jurisdiction over Ashland because Pennsylvania's consent-by-registration scheme violates the Commerce Clause.

"[T]he Commerce Clause grants Congress the power '[t]o regulate Commerce … among the several States ….'" *Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 440 (1978). It is well settled that "the Commerce Clause prevents the States from erecting barriers to the free flow of interstate commerce." *Id*. This prohibition against "state laws that unduly restrict interstate commerce" is known as the "dormant Commerce Clause," and it "prevents the States from adopting protectionist measures and thus preserves a national market for goods and services." *Tennessee Wine & Spirits*, 588 U.S. at 514.

The dormant Commerce Clause imposes two principal restrictions on state regulation of commerce. "First, state regulations may not discriminate against interstate commerce; and second, States may not impose undue burdens on interstate commerce." *S. Dakota v. Wayfair, Inc.*, 858

U.S. 162, 173 (2018). "State laws that discriminate against interstate commerce face 'a virtually *per se* rule of invalidity,'" *id.* (quoting *Granholm v. Heald,* 544 U.S. 460, 476 (2005)) (internal quotation marks omitted); and "face[] a high bar to overcome the presumption of invalidity." *Id.* (citing *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 278 (1988)). "State laws that 'regulat[e] even-handedly to effectuate a legitimate local public interest" become impermissible if "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'" *Id.* (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

As Justice Alito observed, "[t]here is reason to believe that Pennsylvania's registration-based jurisdiction law discriminates against out-of-state companies. But at the very least, the law imposes a 'significant burden' on interstate commerce by '[r]equiring a foreign corporation … to defend itself with reference to all transactions,' including those with no forum connection." *Mallory*, 600 U.S. at 161 (Alito, J., concurring in part and in the judgment).

1. Pennsylvania's Statutory Scheme Violates the Commerce Clause by Discriminating Against Out-of-State Entities

On its face, Pennsylvania's statutory scheme discriminates against out-of-state entities by forcing them to waive a due process right in order to do business. "When a state statute['s] … effect is to favor in-state economic interests over out-of-state interests," as the Pennsylvania statutory scheme does, the Supreme Court has "generally struck down the statute without further inquiry." *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986).

The Supreme Court has repeatedly recognized that "[t]hose who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." *See, e.g., J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011). In order to do business in the Commonwealth, out-of-state entities must agree to waive that due process right, while in-state businesses need not waive any due process rights.

12

Moreover, the law is discriminatory in its practical effect on business, as Justice Alito noted:

> Pennsylvania's law seems to discriminate against out-of-state companies by forcing them to increase their exposure to suits on all claims in order to access Pennsylvania's market while Pennsylvania companies generally face no reciprocal burden for expanding operations into another State.

600 U.S. at 161 n.7. *See also* John Preis, *The Dormant Commerce Clause as a Limit on Personal Jurisdiction*, 102 Iowa L. Rev. 121, 138 (2016) (arguing that "jurisdiction-via-registration laws … have the 'practical effect' of discriminating against out-of-state companies."). Such discriminatory state laws are subject to "a virtually per se rule of invalidity." *S. Dakota v. Wayfair, Inc.*, 858 U.S. at 173 (internal quotation omitted).

> 2. <u>Pennsylvania's Statutory Scheme Violates the Commerce Clause by Imposing an Undue and Impermissible Burden on Interstate Commerce</u>

Even if it were not deemed discriminatory, the Pennsylvania statutory scheme violates the Commerce Clause because it imposes an undue burden on interstate commerce. Indeed, it has long been established that "[r]equiring a foreign corporation to defend itself with reference to all transactions, including those in which it did not have the minimum contacts necessary for supporting personal jurisdiction"—as Pennsylvania's statutory scheme does—"is a significant burden." *Bendix Autolite Corp. v. Midwesco Enters., Inc.*, 486 U.S. 888, 893 (1988).

Thus, the only question is whether this significant burden can be justified by a legitimate state interest. And as Justice Alito noted, one would be "hard-pressed to identify any *legitimate local* interest that is advanced by requiring an out-of-state company to defend a suit brought by an out-of-state plaintiff on claims wholly unconnected to the forum State." 600 U.S. at 162 (emphasis in original). The dissent likewise observed that "Pennsylvania … 'has no legitimate interest in a controversy with no connection to the Commonwealth that was filed by a non-resident against a

foreign corporation.'" *Id.* at 169, n. 1 (Barrett, J., dissenting). And the *Mallory* plurality offered no disagreement on this point, because it is clear that a state has no interest in regulating wholly out-of-state persons and conduct.[2] *See, e.g.*, *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996).

For example, In *Davis v. Farmers' Co-operative Equity Co.*, 262 U.S. 312 (1923), a Kansas company sued a Kansas railroad in Minnesota, on claims arising from a "transaction [that] was in no way connected with Minnesota" or with the defendant's agent located in Minnesota. *Id.* at 314. A Minnesota statute provided that any foreign corporation that had "an agent in th[e] state for the solicitation of freight and passenger traffic" could be served with process upon that agent. *Id.* The Minnesota Supreme Court had construed this statute as compelling foreign corporations to "submit to suit" in Minnesota on any "cause of action, wherever it may have arisen"—in other words, to submit to general jurisdiction—as a condition of maintaining an agent for solicitation. *Id.* at 315. The Supreme Court struck down the Minnesota statute as construed by the Minnesota Supreme Court, and as applied, finding that the statute "imposed upon interstate commerce a serious and unreasonable burden," which was not justified by any state interest. *Id.* at 315, 317 ("[O]rderly effective administration of justice clearly does not require that a foreign carrier shall submit to a suit in a state in which the cause of action did not arise, in which the transaction giving rise to it was not entered upon, in which the carrier neither owns nor operates a railroad, and in which the plaintiff does not reside."). The statute was therefore "obnoxious to the [C]ommerce [C]lause." *Id.*

---

[2] The Pennsylvania Supreme Court itself disclaimed any state interest in such a dispute: "Pennsylvania has no legitimate interest in a controversy with no connection to the Commonwealth that was filed by a non-resident against a foreign corporation that is not at home here." *Mallory I*, 266 A.3d at 567. While *Mallory I* has, of course, been vacated, the lack of a legitimate state interest was expressly recognized by the dissent and Justice Alito in *Mallory II*, and even the majority offered no real challenge to the proposition that Pennsylvania lacks any legitimate interest in adjudicating a dispute brought by an out-of-state party against an out-of-state defendant arising from injuries that are alleged to occur outside of Pennsylvania.

at 315. The court explained that "[b]y requiring from interstate carriers general submission to suit," the law "unreasonably obstruct[ed] and unduly burden[ed], interstate commerce." *Id.* at 317; *see also Mallory*, 600 U.S. at 159-60 (Alito, J., concurring in part and in the judgment).

In *Bendix*, the Supreme Court considered an Ohio law that tolled the statute of limitations for any period of time that a corporation was "not present" in the state. 486 U.S. at 889. To be "present," the out-of-state corporation had to appoint an agent for service of process, which operated as consent to general jurisdiction in Ohio. *Id.* "Ohio's statutory scheme thus force[d] a foreign corporation to choose between exposure to the general jurisdiction of Ohio courts or forfeiture of the limitations defense, remaining subject to suit in Ohio in perpetuity." *Id.* at 888.

The Supreme Court readily found that the Ohio law imposed a significant burden on out-of-state corporations—one greater than that imposed on domestic corporations—because it required them to subject themselves to general jurisdiction in Ohio in order to avail themselves of the statute of limitations defense. *Id.* at 892, 894. Nor could this significant burden be justified by any state interest, as Ohio's long-arm statute would have permitted service on the out-of-state defendant "for acts done within the state." *Id.* at 894. The Ohio law therefore "violate[d] the Commerce Clause, since it impose[d] an impermissible burden on interstate commerce." *Id.* at 888. The Court explained that the Commerce Clause prohibits a state from conditioning the grant of "ordinary legal defenses or like privileges to out-of-state … corporations engaged in commerce … on the waiver or relinquishment of rights that the foreign corporation would otherwise retain." *Id.* at 893 (citing *Dahnke-Walker Milling Co. v. Bondurant*, 257 U.S. 282 (1921); *Allenberg Cotton Co. v Pittman*, 419 U.S. 20 (1974)).

*Davis* and *Bendix* make clear that Pennsylvania's statutory scheme impermissibly burdens interstate commerce and thus violates the Commerce Clause. The statutory scheme requires

submission to general jurisdiction—*i.e.* the waiver of a corporation's right against being sued in Pennsylvania on claims wholly unconnected to the Commonwealth—in exchange for the right to do business. The Supreme Court has already held this to be a significant burden. That burden is unjustified and thus impermissible because, as set forth above, Pennsylvania has no legitimate countervailing interest in adjudicating claims between out-of-state parties arising from out-of-state conduct.

As it stands, Pennsylvania's statutory scheme creates a significant risk that corporations will choose not to do business in Pennsylvania rather than possibly becoming subject to suit in the Commonwealth on claims unrelated to their in-state activities, as a result of complying with Pennsylvania's mandatory registration statute.[3] Indeed, for Ashland and other similarly situated defendants, this possibility has become a repeated reality: they routinely face "solvent" lawsuits brought in Pennsylvania by out-of-state plaintiffs, alleging out-of-state exposures, while working for out-of-state employers. As courts and commentators have observed, a jurisdictional statute may impair commerce where "the risk of amenability to jurisdiction in a foreign jurisdiction may discourage transactions with 'foreseeable foreign effects.'" T. Griffin Vincent, *Toward A Better Analysis for General Jurisdiction Based on Appointment of Corporate Agents*, 41 Baylor L. Rev. 461, 485- 86 (1989) (quoting Mark P. Gergen, *Constitutional Limitations on State Long Arm Jurisdiction*, 49 U. Chi. L. Rev. 156, 174 (1982)) (also noting that "[p]redicating jurisdiction solely on a corporate defendant's designation of a resident agent for receipt of service may be an

---

[3] This chilling effect on interstate commerce animated in part the Delaware Supreme Court's rejection of jurisdiction premised on registration: "Our citizens benefit from having foreign corporations offer their goods and services here. If the cost of doing so is that those foreign corporations will be subject to general jurisdiction in Delaware, the rightly may choose not to do so …." *Genuine Parts Co. v Cepec*, 137 A.3d 123, 142-43 (Del. 2016) (citing, *inter alia*, *Bendix*, 486 U.S. at 894; Vincent, 41 Baylor L. Rev. at 485).

impermissible burden on interstate commerce"); Preis, 102 Iowa L. Rev. at 139 (observing that jurisdiction-by-registration laws likely discourage out-of-state corporations from doing business in state); *see also Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc.*, 239 F.2d 502, 507 (4th Cir. 1956) ("[S]ustaining jurisdiction" over foreign corporation with "indirect, casual, or tenuous connection with a State … would not only be offense to the due process clause but it would involve the danger of grave burdens and impediments to interstate commerce ….").

In sum, asserting general jurisdiction over Ashland on the basis of its registration to do business in the Commonwealth would violate the dormant Commerce Clause.

### v.    Jurisdiction Based on Registration Violates the Unconstitutional Conditions Doctrine

*Mallory II*'s holding that jurisdiction based on registration does not violate a corporation's due process rights leaves a related but distinct question unanswered:[4] does Pennsylvania violate the unconstitutional conditions doctrine by conditioning a foreign corporation's right to do in-state business on its mandatory relinquishment of its due process rights? Put differently, even assuming that Ashland waived its due process rights, was it unconstitutionally compelled to do so? The answer to that question, respectfully, is "yes." For that reason, any "consent" to be inferred from a foreign corporation's registration is not a constitutionally sound basis for jurisdiction because it has been unconstitutionally coerced as a condition of the privilege of doing business in Pennsylvania.

The unconstitutional conditions doctrine "holds that even if a state has absolute discretion to grant or deny a privilege or benefit, it cannot make the grant of such a privilege subject to

---

[4] Justice Alito recognized as much when he noted that "[a]*ssuming* that the Constitution allows a State to impose such a registration requirement," he did not find that suits premised on registration "violate[d] the corporation's right to 'fair play and substantial justice.'" *Mallory II*, 600 U.S. at 150 (Alito, J.) (concurring in part and in the judgment).

conditions that improperly 'coerce,' pressure, or 'induce' the waiver of constitutional rights." Richard A. Epstein, *Unconstitutional Conditions, State Power, and the Limits of Consent*, 102 Harv. L. Rev. 4, 6-7 (1988). This principle prevents the government from "produc[ing] a result which it could not command directly" by using conditional benefits to "penalize[] and inhibit[]" the exercise of constitutional rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (internal quotation marks omitted); *see also Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214-15 (2013) (government programs that "leverage [benefits] to regulate [constitutional rights] outside the contours of the program itself" violate the unconstitutional conditions doctrine); *Frost v. R.R. Comm'n*, 271 U.S. 583, 593-99 (1926) ("It is inconceivable that the guaranties embedded in the Constitution may … be manipulated out of existence" in this way).

The Court has held the doctrine applicable to a range of benefits (from tax exemptions to welfare benefits to public employment to land use permits) and a variety of constitutional rights (from free speech, to takings, to the right to travel, to double jeopardy protections, to due process rights). *See Perry*, 408 U.S. at 597; *Koontz v. St. John's River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013); *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 838 (1987); *Speiser v. Randall*, 357 U.S. 513, 518 (1958); *Green v. United States*, 355 U.S. 184, 193-94 (1957); *Frost*, 271 U.S. at 593-99 (state could not condition private carriers' right to use public highways on the private carrier's legislatively compelled agreement to assume the burdens and duties of a common carrier).

In a more directly analogous example, the Court held that a state could not condition a foreign corporation's right to do business on the corporation's waiver of its right to resort to the federal courts within that state, whether by itself bringing suit there or by removing a suit brought against it to such a court. *Terral v. Burke Const. Co.*, 257 U.S. 529, 532-33 (1922).

Accordingly, even if the Commonwealth could refuse a foreign corporation permission to transact business altogether, it may not condition such permission on the waiver of constitutional due process rights not to be haled into court on claims that are *unrelated* to the corporation's contacts with the forum state—a condition that would flunk any formulation of the unconstitutional conditions doctrine. *See, e.g.*, *Nollan*, 483 U.S. at 838 (finding a condition unconstitutional because it was not "reasonably related to the public need or burden" created by the activity conditionally permitted).

Even if the Pennsylvania statutory scheme can be deemed consent to general jurisdiction, such consent is constitutionally invalid—not to mention functionally involuntary[5]—in that it conditions a foreign corporation's right to do even a *de minimis* amount of business in Pennsylvania on the compelled surrender of its due process rights. In this way, the Pennsylvania statutory scheme violates the unconstitutional conditions doctrine. Accordingly, this Court cannot assert personal jurisdiction pursuant to 42 Pa. C.S. Sec. 5301(a)(2)(ii) (allowing general jurisdiction based on "consent, to the extent authorized by the consent").

### vi. The Due Process Clause, Acting as an Instrument of Interstate Federalism, Divests this Court of Personal Jurisdiction over Ashland

Independently of the arguments set forth above, jurisdiction based on registration is unconstitutional for the additional reason that it would impermissibly intrude on the sovereignty of coequal sister states, thus upsetting the balance of interstate federalism. In such a scenario, the Due Process Clause can and must divest a court of jurisdiction even where the assertion of jurisdiction would not otherwise violate a defendant's individual due process rights.

---

[5] As one commentator has observed, with respect to registration statutes specifically, "[t]he notion of consent implies that a party has alternatives—in particular, the alternative not to consent." Tanya J. Monestier, *Registration Statutes, General Jurisdiction, and the Fallacy of Consent*, 36 Cardozo L. Rev. 1343, 1389 (2015).

The narrow majority opinion in *Mallory* holds only that *Pennsylvania Fire* is still good law and allows states to rely on a defendant's consent, implied from its registration to do business, as a basis for general jurisdiction. But this does not end the due process inquiry. While the *Mallory* opinion arguably resolved in the negative the question of whether an *individual defendant's* due process rights are violated by the consent by registration, the majority did *not* address whether that scheme impermissibly infringes on interstate federalism.

The Court has long recognized that due process limitations on state exercises of jurisdiction not only "protect the defendant against the burdens of litigating in a distant or inconvenient forum[,]" but also "act[] to ensure that the States[,] through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system."[6] *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Thus, as recognized by the dissent, even where the Due Process Clause would not prohibit the assertion of jurisdiction over an individual defendant, the same Clause, "acting as an instrument of interstate federalism, may sometimes act to divest the State of the power to render a valid judgment." *Id.* at 294; *see also Hanson v. Denckla*, 357 U.S. 235 (1958). Indeed, "th[e] federalism interest may be decisive." *Bristol Myers*, 582 U.S. at 263. Federalism concerns are especially topical where, as here, there is an "out of state company" sued "by an out of state plaintiff on claims wholly unrelated to Pennsylvania." *Mallory*, 600 U.S. at 160 (Alito, J.) (concurring in part and in the judgment).

Nothing in *Mallory* alters the longstanding principle that the Due Process Clause may act to divest a court of jurisdiction, even absent any intrusion onto an individual defendant's due process rights.

---

[6] The majority did not overturn any of the Court's existing jurisdictional jurisprudence and Justice Gorsuch's plurality went to great lengths to attempt to harmonize the majority decision with existing jurisprudence. *See Mallory*, 600 U.S. at 137-46.

Plaintiff, a New Orleans resident, alleges no facts showing that Decedent, himself a "life-long resident of New Orleans," had any ties whatsoever to this Commonwealth. (Ex. 1). The only reasonable inference permitted on this record is that all of Decedent's alleged occupational exposures occurred, if at all, in Louisiana; and that any medical treatment he received for the claimed injuries also took place in Louisiana. Just as Justice Alito and the dissent—together with the Pennsylvania Supreme Court—could find no legitimate Pennsylvania interest in resolving a dispute between out of state parties involving out of state conduct, *see Mallory*, 600 U.S. at 160; here, there is no legitimate local interest in resolving such a dispute. (*See supra,* n. 3). On the other hand, Louisiana has a far stronger interest in adjudicating claims of harm suffered in that state. This is a paradigmatic example of the type of case in which concerns of federalism and the sovereignty of other states should divest Pennsylvania of jurisdiction.

## IV.  PENNSYLVANIA MAY NOT EXERCISE SPECIFIC PERSONAL JURISDICTION OVER ASHLAND

Plaintiff likewise fails to establish that this Court has specific personal jurisdiction over Ashland. "Once a defendant challenges a court's exercise of personal jurisdiction over it, the plaintiff bears the burden of establishing personal jurisdiction." *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citing *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)). In opposing a motion under Rule 12(b)(2), "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Time Share Vacation Club*, 735 F.2d at 66 n.9.

"The inquiry as to whether specific jurisdiction exists has three parts. First, the defendant must have 'purposefully directed its activities' at the forum." *O'Connor*, 496 F.3d 317 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *O'Connor*, 496 F.3d at 317 (citing *Helicopteros*

21

*Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). "And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comports with 'fair play and substantial justice.'" *O'Connor*, 496 F.3d at 317 (quoting *Burger King*, 471 U.S. at 476).

### A. Plaintiff Fails to Establish Purposeful Availment

As to the first element, "the defendant must have purposefully availed itself of the privilege of conducting activities within the forum." *O'Connor*, 496 F.3d at 317 (citations omitted, internal quotations omitted) (also explaining that "what is necessary is a deliberate targeting of the forum."); *see also Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 370 (3d Cir. 2002) (specific jurisdiction proper only where nonresident commercial defendant has "taken action … purposefully directed toward the forum State.") (quoting *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987)).  The critical question is whether Ashland's connections with the Commonwealth were such that it should "reasonably anticipate being haled into court" here. *World-Wide Volkswagen*, 444 U.S. at 297. Plaintiff has the burden of establishing "with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." *Provident Nat'l Bank*, 819 F.2d at 437.

### i. Pennsylvania and Third Circuit Courts Do Not Recognize the Stream-of-Commerce Theory of Purposeful Availment

As a threshold matter, it appears that Plaintiff is invoking the stream-of-commerce theory in an attempt to demonstrate purposeful availment. (*See* Pl.'s Compl. ¶ 11(f)) (ECF No. 1-1) (alleging that Ashland "placed into the stream of commerce" various products). "The stream-of-commerce theory contends … that specific personal jurisdiction exists over a non-resident defendant when that defendant 'has injected its goods into the forum state indirectly via the so-called stream of commerce,' rendering it foreseeable that one of the defendant's goods could cause

22

injury *in the forum state.*" *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (quoting *D'Jamoos*, 566 F.3d at 104-05) (emphasis added). Third Circuit and Pennsylvania courts have rejected this theory as a proper basis for specific personal jurisdiction.[7] As the Third Circuit has explained, "'[w]hat is necessary'" to demonstrate purposeful availment "'is a deliberate targeting of the forum' … so efforts to 'exploit a national market' that 'necessarily included Pennsylvania' are insufficient" to establish purposeful availment. *Shuker*, 885 F.3d at 780 (quoting *O'Connor*, 496 F.3d at 317; and *D'Jamoos*, 566 F.3d at 102-06). "[A] defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state." *Kachur v. Yugo America, Inc.*, 632 A.2d 1297, 1301 (Pa. 1993); *see also Filipovich v. J.T. Imports, Inc.*, 637 A.2d 314, 316 (Pa. Super. 1994) (finding no specific jurisdiction over California-based manufacturer of allegedly defective helmet where "[t]he accident did not occur in Pennsylvania," notwithstanding that "helmets could be purchased from [defendant] by placing … orders with Pennsylvania … shops and [defendant's] advertisements appeared in magazines available nationwide," including in Pennsylvania).

Moreover, even if the stream-of-commerce theory upon which Plaintiff relies was viable under Pennsylvania or Third Circuit precedent, her reliance on the theory would nevertheless be misplaced because the theory turns on whether, by placing products into the stream of commerce, it was "foreseeable that one of the defendant's goods could cause injury *in the forum state.*" *Shuker*,

---

[7] The rejection by Third Circuit and Pennsylvania courts of the stream-of-commerce theory—which is predicated upon the foreseeability to the defendant that its product could end up in, and therefore cause injury in, the forum state—is consistent with United States Supreme Court jurisprudence rejecting mere foreseeability as a basis for jurisdiction. *See Burger King*, 471 U.S. at 474 ("[T]he Court has consistently held that" the "foreseeability of causing injury in another state" is "not a 'sufficient benchmark' for exercising personal jurisdiction." (quoting *World-Wide Volkswagen*, 444 U.S. at 295)).

F.3d at 708 (emphasis added). Here, all of the injuries alleged by Plaintiff occurred *outside of Pennsylvania*. Accordingly, even if available, the stream-of-commerce theory would be wholly inapplicable to the facts of this case.

### ii.    Plaintiff Fails to Demonstrate Purposeful Availment

Apart from turning to the stream-of-commerce theory to establish purposeful availment, Plaintiff relies on nothing more than sweeping, conclusory allegations that Ashland supplied allegedly defective products "to co-Defendants PPG and Dupont in Pennsylvania from its own Pennsylvania facilities"—she never specifies a single such facility—which products "were incorporated into the co-Defendant's benzene-containing products when they were manufactured in Pennsylvania." (Pl.'s Compl. ¶ 11(f)) (ECF No. 1-1). This vague speculation does not even come close to satisfying Plaintiff's burden to allege specific facts with reasonable particularity showing that Ashland purposefully availed itself of the privileges of doing business in Pennsylvania.

### B.  Plaintiff Cannot Show Any Connection Between Decedent's Alleged Injuries and Any Activity Conducted by Ashland in Pennsylvania

Even if Plaintiff managed to establish any conduct of Ashland that directly targeted Pennsylvania, her claims "must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers*, 582 U.S. at 262 (alterations and internal quotations omitted). When there is no connection between a defendant's in-state activities and a plaintiff's claims—as is the case here— "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the [s]tate … [A] defendant's general connections with the forum are not enough …." *Id*. at 264. Thus, in reaffirming the specific jurisdiction standard in *Bristol-Myers*, the Supreme Court held that there was no specific jurisdiction over a nonresident defendant where "[t]he relevant plaintiffs [were] not California residents and [did] not claim to have suffered harm in that State" and where

"all the conduct giving rise to the nonresidents' claims occurred elsewhere." *Id.* at 266.

In determining whether claims "arise out of or relate to the defendant's contacts," the Third Circuit requires that the defendant's contacts to the forum must not only be shown to be a "but-for" cause of a plaintiff's injuries, but that there be an even "closer and more direct causal connection" than merely satisfying the but-for test. *O'Connor*, 496 F.3d at 323. Thus, the Third Circuit requires a "fact-sensitive" inquiry" that demonstrates the connection was reasonably foreseeable to the defendant, and that the non-resident defendant's jurisdictional exposure is "*proportional*" to its conduct in the forum. *Id.* (emphasis added); *see also TorcUP, Inc. v. Aztec Bolting Servs., Inc.*, 386 F. Supp. 3d 520, 526 (E.D. Pa. 2019) (no jurisdiction where defendant was alleged to have placed orders, attended training, and obtained a customer list and trade secrets at plaintiff's Pennsylvania headquarters because plaintiff's claims related only to defendant's contacts in Texas).

As in *Bristol-Myers*, it is apparent from the face of the Complaint that Plaintiff cannot satisfy these requirements. Even if the Court were to find that Plaintiff had satisfied the purposeful availment prong of the specific jurisdiction inquiry, she cannot connect any contact or activity by Ashland to Decedent's alleged injuries.

Plaintiff is a New Orleans resident, as was Decedent. Plaintiff fails to plead facts showing that the claimed injuries relate in any way to any of the "tortious" conduct Ashland is alleged to have committed in Pennsylvania. More to the point, she fails to plead facts showing that Decedent *ever* actually encountered *any* Ashland solvent (or any product incorporating an Ashland solvent) that was connected in any meaningful way to Pennsylvania.

**C. Subjecting Ashland to Specific Personal Jurisdiction in Pennsylvania Offends Traditional Notions of Fair Play and Substantial Justice**

Because Plaintiff cannot satisfy the first two prongs of the specific jurisdiction analysis,[8] this Court need not reach the third prong. Nevertheless, were the Court to reach this prong, it is evident that the exercise of jurisdiction would *not* "comport with 'traditional notions of fair play and substantial justice.'" *O'Connor*, 496 F.3d at 324 (quoting *Int'l Shoe*, 326 U.S. at 316)). The Supreme Court has identified several factors that a court should consider, including "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most effective resolution of controversies." *Burger King*, 471 U.S. at 477.

Here, several of these factors militate against a finding of jurisdiction over Ashland. "[T]he burden on the defendant is a 'primary concern' in any case," *O'Connor*, 496 F.3d at 324 (quoting *World-Wide Volkswagen*, 444 U.S. at 292). Ashland—which is neither incorporated nor headquartered in Pennsylvania—would be forced to defend itself in an inconvenient and unfamiliar jurisdiction. *See Portella v. Life-Time Truck Prods., Inc.*, 127 F. Supp. 2d 652, 659 (E.D. Pa. 2000) (asserting jurisdiction over defendant whose "corporate activity was limited to … Kentucky" would "offend 'traditional notions of fair play.'"). Moreover, as set forth above, (*see supra,* n. 3); Pennsylvania has no significant interest in adjudicating this dispute between nonresident plaintiffs and a nonresident defendant, particularly where it "has no ability to guard against or regulate" allegedly unsafe conduct which occurred at Ashland's Kentucky headquarters or elsewhere outside of Pennsylvania. *Rosso-Gana v. McDonald's Restaurant*, No. 2:15-cv-2016,

---

[8] Third Circuit courts use the term "minimum contacts" to refer to the first two prongs in the specific jurisdiction constitutionality analysis, *i.e.*, (1) whether a defendant has purposefully targeted the forum, and (2) where plaintiff's claims arise from defendant's in-state activities. *See D'Jamoos*, 556 F.3d at 102.

2015 WL 3444317, at *5 (E.D. Pa. May 28, 2015) (also noting that plaintiff failed to show that defendant's home state could not effectively adjudicate dispute). Similarly, this dispute does not implicate Pennsylvania's interest in adjudicating disputes arising from injuries suffered within its borders because Plaintiff alleges no exposure within the Commonwealth.

In short, Plaintiff has failed to satisfy the "primary concern" of the jurisdictional inquiry, to wit, that Ashland's right not to be subject to the coercive powers of a state where it is not at home is outweighed by Pennsylvania's interest in resolving a dispute arising from activities within its borders. Therefore, the exercise of specific jurisdiction over Ashland under these circumstances would be unconstitutional.

### D.  A Pennsylvania Trial Court Has Already Found Specific Jurisdiction Lacking Over Ashland

The Pennsylvania Court of Common Pleas has already found specific jurisdiction lacking over Ashland in a nearly indistinguishable case—even though the plaintiffs in that case alleged a far more particularized basis for jurisdiction than Plaintiff does here. *See Knight v. United States Steel Corp.*, No. 220800385 (Phila. Ct. Com. Pl.). Like this case, *Knight* involved claims asserted by out-of-state residents—represented by the same firm as this Plaintiff—arising from alleged exposures to benzene-containing products that occurred exclusively outside of Pennsylvania. (*See Knight* Compl. ¶¶ 4-8) (Ex. 3). The *Knight* plaintiffs filed suit in August 2022, after the decision in *Mallory I* but prior to *Mallory II*. Unable to rely on registration-based general jurisdiction, they attempted to establish this Court's specific personal jurisdiction over Ashland by alleging that Ashland had a "distribution center in Pennsylvania from which Ashland obtained benzene-containing solvents manufactured by Pennsylvania companies in Pennsylvania . . . which were used to manufacture product in Pennsylvania that Plaintiff was exposed to." (*Id.* ¶ 12(i)).

Following months of jurisdictional discovery, multiple conferences, and a lengthy oral argument, the Pennsylvania Court of Common Pleas agreed that the Commonwealth lacked specific jurisdiction over Ashland: "there is no evidence that Plaintiff ever read any warning, used any product or was ever exposed to any benzene in Pennsylvania, nor is there any evidence that Plaintiff was exposed to a specific product, or batch of products, manufactured in Pennsylvania that contained Ashland chemicals." (Order on Ashland's Preliminary Objections in *Knight*, June 21, 2023 (Ex. 4)).

Similarly, the *Knight* Court considered preliminary objections filed by Union Oil Company of California ("Union Oil"), who was alleged to be subject to specific jurisdiction on the same grounds asserted here: that it had sold solvent ingredients to co-defendants in Pennsylvania, which the co-defendants allegedly incorporated into finished products that may have ultimately been routed to the plaintiff. The Court rejected these allegations on grounds equally applicable here. (Order on Union Oil's Preliminary Objections in *Knight*, June 21, 2023) ("While Union Oil *may* have sold chemicals to Pennsylvania companies, who then *may* have re-sold those products in Florida, which *may* have been used by Plaintiff's employer in Florida does [*sic*] not meet any level of certainty that Plaintiff's exposure to benzene in Florida from 1968 through 2020 was connected in any specific way to Union Oil's Pennsylvania contacts.") (emphasis added) (Ex. 5)).

The same result should follow here.

28

## V.    CONCLUSION

For the foregoing reasons, Ashland respectfully requests that this Court grant this motion and enter an order dismissing Plaintiff's Complaint as to Ashland, with prejudice.


Dated: November 21, 2024        By:        /s/ *Steven M. Lucks*
                                            Steven M. Lucks
                                            Andrew P. Fishkin
                                            FISHKIN LUCKS LLP
                                            One Gateway Center, Suite 1150
                                            Newark, NJ 07102
                                            (973) 536-2800
                                            slucks@fishkinlucks.com
                                            afishkin@fishkinlucks.com

                                            Matthew C. Cairone
                                            Nicolai A. Schurko
                                            FISHKIN LUCKS LLP
                                            1900 Market Street, 8th Floor
                                            Philadelphia, PA 19103
                                            (267) 627-1234
                                            mcairone@fishkinlucks.com
                                            nschurko@fishkinlucks.com
                                            *Attorneys for Defendant Ashland Inc.*