Exhibit
3

**LOCKS LAW FIRM**
**ANDREW J. DUPONT, ESQUIRE**
**ATTORNEY I.D. NO.: 91305**
**SHRICE C. WALLACE, ESQUIRE**
**ATTORNEY I.D. NO.: 201511**
**NICHOLAS J. WILLIAMSON, ESQUIRE**
**ATTORNEY I.D. NO.: 203002**
**THE CURTIS CENTER, SUITE 720E**
**601 WALNUT STREET**
**PHILADELPHIA, PA 19106**
adupont@lockslaw.com
swallace@lockslaw.com
nwilliamson@lockslaw.com
**(215) 893-0100**

**THIS IS A MAJOR JURY TRIAL**
**AN ASSESSMENT OF DAMAGES**
**HEARING IS REQUIRED**

*Filed and Attested by the*
*Office of Judicial Records*
*31 MAY 2022 03:38 pm*
*I. LOWELL*

**ATTORNEYS FOR PLAINTIFFS**

---

| | | |
|---|---|---|
| **CLIFFORD E. KNIGHT** and | : | **COURT OF COMMON PLEAS** |
| **KATIE KNIGHT** h/w | : | **PHILADELPHIA COUNTY** |
| **9709 N 21st Street** | : | |
| **Tampa, FL 33612** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **Plaintiffs** | : | **MAY TERM, 2022** |
| | : | |
| **vs.** | : | **No.** |
| | : | |
| **SUNOCO, LLC (R&M) f/k/a** | : | |
| **Sunoco, Inc. (R&M) f/k/a Sun Company, Inc.** | : | |
| **and f/k/a/ Sun Oil Company, Inc.** | : | |
| **3801 West Chester Pike** | : | |
| **Newtown Square, PA 19073** | : | |
| | : | |
| **UNITED STATES STEEL CORPORATION** | : | |
| **600 Grant Street, Room 1500** | : | |
| **Pittsburgh, PA 15219** | : | |
| | : | |
| **RADIATOR SPECIALTY COMPANY** | : | |
| **1900 Wilkinson Boulevard** | : | |
| **Charlotte, NC 28208** | : | |
| | : | |
| **TEXACO INC.** | : | |
| **6001 Bollinger Canyon Road** | : | |
| **San Ramon, CA 94583** | : | |
| | : | |
| **CRC INDUSTRIES, INC.** | : | |
| **885 Louis Drive** | : | |
| **Warminster, PA 18974** | : | |
| | : | |

1

Case ID: 220800385

**SAFETY-KLEEN SYSTEMS, INC.**     :
**42 Longwater Drive, P.O. Box 9149**     :
**Norwell, MA 02061**     :
    :
**UNION OIL COMPANY OF CALIFORNIA**     :
**d/b/a Unocal and AMSCO, Individually and as**     :
**Successor in Interest to American Mineral**     :
**Spirits Company a/k/a AMSCO**     :
**PO Box 6028**     :
**San Ramon, CA 94583**     :
    :
**UNIVAR SOLUTIONS USA, INC. f/k/a**     :
**Univar USA, Inc. and Chemcentral Corp. and**     :
**Van Waters & Rodgers, Inc.**     :
**17425 NE Union Hill Road**     :
**Redmond, WA 98052**     :
    :
**ASHLAND, LLC f/k/a Ashland, Inc.**     :
**50 E. Rivercenter Boulevard**     :
**Covington, KY 41012**     :
    :
**GENUINE PARTS COMPANY**     :
**2999 Wildwood Parkway**     :
**Atlanta, GA, 30339**     :
    :
**ILLINOIS TOOL WORKS, INC., Individually**     :
**and as Successor-in-Interest to**     :
**Pennzoil-Quaker State Company**     :
**3600 West Lake Avenue**     :
**Glenview, IL 60026**     :
    :
**SHELL USA, INC. f/k/a Shell Oil Company**     :
**One Shell Plaza**     :
**910 Louisiana Street**     :
**Houston, TX  77002**     :
    :
                **Defendants**     :
_____:

2

Case ID: 220800385

# PLAINTIFFS' COMPLAINT

## NOTICE TO PLEAD
### CODE 2T

You have been sued in this Court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance, personally, or by an attorney, and filing in writing with the Court your defense objections to the claims set forth against you.

You are warned that if you fail to do so, the case may proceed the Court without further notice for any money claims in the Complaint or for any other claim or relief requested by the Plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
One Reading Center
Philadelphia, PA 19107
(215) 238-1701

Le han demandado a usted en la corte.  Si desea defenderse Contra las quejas presentadas es absolutamente necesario que usted responda dentro de 20 dias despues de ser servideo Con esta demanda y aviso.  Para defenderse, es necesario que used, o su abogado, registre con la corte en forma escrita, el punto de vista de usted y cualquier objeccion contra las quejas en esta demanda.without you, and a judgment may be entered against you by Recuerde: Si usted no reponde a esta demanda, se puede proseguir con el processo sin su participacion.  Entonces, la corte puede, sin notificarlo, decidir a favor del demandante y  requerira que usted cumpla con todas las provisiones de esta demanda.  Por razon De esa decision, es posible que Usted pueda perder dinero, propiedad o estros derechos importantes.

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENET.  SI NO TIENE ABOGADO O SI NOTIENE EL DINERO SUFICIENTE  DE  PAGAR TAL SERVICIO.  VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PAPA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.
SOCIACION DE LICENCIADOS DE FILADELFIA
Servicio De Referencia e Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-1701

3

Case ID: 220800385

**LOCKS LAW FIRM**
**ANDREW J. DUPONT, ESQUIRE**
**ATTORNEY I.D. NO.: 91305**
**SHRICE C. WALLACE, ESQUIRE**
**ATTORNEY I.D. NO.: 201511**
**NICHOLAS J. WILLIAMSON, ESQUIRE**
**ATTORNEY I.D. NO.: 203002**
**THE CURTIS CENTER, SUITE 720E**
**601 WALNUT STREET**
**PHILADELPHIA, PA 19106**
adupont@lockslaw.com
swallace@lockslaw.com
nwilliamson@lockslaw.com
**(215) 893-0100**

**THIS IS A MAJOR JURY TRIAL**
**AN ASSESSMENT OF DAMAGES**
**HEARING IS REQUIRED.**


**ATTORNEYS FOR PLAINTIFFS**

---

| | | |
|---|---|---|
| **CLIFFORD E. KNIGHT and** | : | **COURT OF COMMON PLEAS** |
| **KATIE KNIGHT h/w** | : | **PHILADELPHIA COUNTY** |
| | : | |
| **Plaintiffs** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **vs.** | : | **MAY TERM, 2022** |
| | : | |
| **SUNOCO, LLC (R&M), et al.,** | : | **No.** |
| | : | |
| **Defendants** | : | |

---

### PLAINTIFFS' COMPLAINT

### CODE 2T

### JURISDICTION AND VENUE

1.      This Court has general personal jurisdiction, pursuant to 42 Pa.C.S. §5301, over those Defendants which continuously and systematically conduct and/or transact a part of their interstate business within the Commonwealth of Pennsylvania. This court has general personal jurisdiction over those Defendants which are incorporated under the laws of the Commonwealth of Pennsylvania or which maintain their principal place of business within the Commonwealth of Pennsylvania. This court also has general personal jurisdiction over those Defendant that have registered with the Pennsylvania Department of State and thereby consented to the general

4

Case ID: 220800385

personal jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S. § 5301(a)(2)(i)-(ii), 15 Pa.C.S.§402(d) and 15 Pa.C.S. 376(f).

2.      Venue in this Court is proper pursuant to Pa.R.C.P. 1006 and Pa.R.C.P. 2179, since every Defendant regularly conducts business within the County of Philadelphia, and transactions and occurrences out of which the cause of action arose occurred in Philadelphia County, and because Defendants made tortious decisions, acts and omissions with regards to the manufacture, sale, design, marketing and warnings for the benzene–containing products and/or acted in conspiracy with other Defendants located within Philadelphia County. Venue is also proper, in addition to other reasons averred herein, because SUNOCO, LLC. (R&M) during times relevant hereto maintained, its corporate headquarters within the City and County of Philadelphia and operated two refineries within the City and County of Philadelphia, where, upon information and belief, solvents used in co-Defendants' products are and were refined.

## FACTS COMMON TO ALL COUNTS

3.      Clifford E. Knight ("Plaintiff") and Katie Knight ("Spouse Plaintiff") reside at the above stated address.

4.      At all times material hereto, Plaintiff was employed by the following employers (hereinafter "employer") where he was exposed to benzene between the years 1968 and 2020.

a)      Texaco Station, Brandon, FL – Mechanic and Gas Pump Attendant

b)       Brandon Chrysler Plymouth, Brandon, FL – Mechanic

c)      American Auto Salvage, Gibsonton, FL – Mechanic

d)      Precision Tune, Fort Lauderdale, FL – Mechanic

e)      American Auto, Pembroke, FL – Mechanic

f)      Corvette Shop and Supplies, Tampa, FL – Mechanic

Case ID: 220800385

5.     As a condition of his employment, Plaintiff worked directly and indirectly with and was directly and indirectly exposed to, on a daily or almost daily basis, various benzene-containing products, including but not limited to, penetrating solvents, solvents, gasoline, brake cleaners, carburetor cleaners and tire repair kits (hereinafter or "benzene-containing products") which products and/or their ingredients, were manufactured, refined, designed, produced, processed, compounded, converted, packaged, sold, distributed, marketed, re-labeled, supplied and/or otherwise placed into the stream of commerce by the Defendants.

6.     In addition to his employment, Plaintiff used various benzene-containing products in the course of non-occupational activities from 1966 to 2020.

7.     Plaintiff worked directly and indirectly with and was directly and indirectly exposed to, on a daily or almost daily basis, various benzene-containing ingredients, including but not limited to, xylene, toluene, mineral spirits, hexane, naphthas, ethylbenzene and other hydrocarbons, which were manufactured, refined, designed, produced, processed, compounded, converted, packaged, sold, distributed, marketed, re-labeled, supplied and/or otherwise placed into the stream of commerce by the Defendants.

8.     Plaintiff was exposed to the Defendants' benzene-containing products, and to the vapors, aerosols, mists and fogs from said products, by means of inhalation and dermal absorption (from direct dermal contact with said products, dermal contact with clothes contaminated by said products and/or dermal contact with benzene vapors in the air.).

9.     As a direct and proximate result of his exposure to the Defendants' benzene-containing products and the Defendants' wrongful conduct, Plaintiff was caused to contract Acute Myeloid Leukemia (hereinafter "AML"). Plaintiff was diagnosed with AML after February 16, 2022. Plaintiff did not learn of a connection between his cancer and his exposure to benzene in the

6

Case ID: 220800385

defendants' products until a later date. Plaintiff has suffered multiple symptoms and side effects of his AML and the treatments therefore.

### **DEFENDANTS**

10.    At all times material hereto, Defendants acted through their agents, ostensible agents, servants or employees, who were acting within the scope of their employment on the business of the Defendants. The Defendants' agents and ostensible agents included their employees and other persons and entities, since the Defendants are all corporations that must act through their employees and others that the Plaintiffs are not able to identify by name without conducting discovery.

11.    The Defendants are all corporations, companies or other business entities which, during all times material hereto and for a time prior thereto, manufactured, produced, processed, compounded, converted, sold, distributed, marketed and/or otherwise placed into the stream of commerce, benzene-containing products and/or raw material ingredients used in benzene-containing products, all of which were used by and around Plaintiff and Plaintiff's employers, or are the successors to and/or otherwise liable for companies which engaged in said conduct.

12.    The Defendants are:

a)    SUNOCO, LLC. (R&M) f/k/a Sunoco, Inc. (R&M) f/k/a Sun Company, Inc. and Sun Oil Company, Inc. (hereinafter "Sunoco" or "Defendant") upon information and belief, is a Pennsylvania corporation, with a principal place of business at the above address, yet which had a principal place of business in the City and County of Philadelphia at times relevant hereto, and which continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the City and County of Philadelphia. Sunoco's corporate headquarters, during times relevant hereto, were located in the City

7

Case ID: 220800385

and County of Philadelphia. Sunoco owned and operated and maintained a joint venture in no less than two refineries (the Girard Point Refinery and the Point Breeze Refinery) in the County of Philadelphia, where benzene and benzene-containing solvent products were refined, including, upon information and belief, solvents used as ingredients in co-Defendants' products, to which the Plaintiff was exposed. Sunoco tested products, including benzene and benzene-containing solvents, in the City and County of Philadelphia. Sunoco wrote warnings and instructions for products, including gasoline, benzene and benzene-containing solvents, in Philadelphia. Sunoco maintains documents and electronic information on the chemical properties and health hazards of gasoline, benzene and benzene-containing solvents in Philadelphia. Sunoco employees with knowledge of the above facts work in Philadelphia.

Upon information and belief, Sunoco has assumed certain liabilities for the Liquid Wrench product and/or ingredients thereof, including Raffinate, through its acquisition of Aristech Chemical Company. On October 14, 1986, USX Corporation formed Aristech Chemical Company as a wholly owned subsidiary. On December 4, 1986, USX Corporation transferred all of its assets and liabilities of the USS Chemicals Division to Aristech Chemical Company. On or about November 9, 2000, Sunoco, Inc. (R&M) acquired the stock, assets and liabilities of Aristech Chemical Company, including liabilities for USS Chemicals Division that existed prior to December 4, 1986. Additionally, upon information and belief, Sunoco manufactured, refined, designed, produced, processed, compounded, converted, packaged, sold, distributed, marketed, re-labeled, supplied and/or otherwise placed into the stream of commerce benzene-containing products to which the Plaintiff was exposed, including but not limited to benzene-

Case ID: 220800385

containing solvents which were used as ingredients in co-Defendants' benzene-containing products.

Benzene has been known to cause cancer since prior to 1964, there is no safe level of exposure to benzene and Sunoco manufactured, designed, produced, sold and supplied benzene containing mineral spirits to Safety-Kleen which was distributed as Safety-Kleen parts washing solvent that the Plaintiff was exposed to. Upon information and belief, Sunoco supplied benzene containing oils, Toluol and Xylol which were used in the co-Defendant, CRC Industries, Inc.'s products, as well as other benzene containing solvents to the co-Defendants for use as ingredients in their benzene containing products, to which the Plaintiff was exposed. Upon information and belief Sunoco supplied other solvent ingredients to these and other Defendants which will be identified through the course of discovery.

b)    UNITED STATES STEEL CORPORATION (hereinafter "US Steel" or "Defendant") is believed to be a Delaware corporation or other business entity having its principal place of business at the above-stated address, which continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the County of Philadelphia. This court has jurisdiction over US Steel because its principal place of business is in Pennsylvania; it refined Raffinate in Pennsylvania; gained knowledge of benzene and Raffinate's ability to cause fatal blood poisoning and cancer in Pennsylvania; made tortious decisions to sell benzene and benzene-containing Raffinate in Pennsylvania; made tortious decisions to place its financial interested ahead of the health and safety of the customers and end users of its benzene and benzene-containing Raffinate in Pennsylvania; made tortious decisions not to warn or adequately warn of the health hazards

Case ID: 220800385

and cancer risk of benzene and benzene-containing Raffinate in Pennsylvania; made tortious decisions to fraudulently conceal its knowledge of the health hazards of benzene and Raffinate in Pennsylvania; and made tortious decisions regarding the formulation and design of benzene-containing Raffinate in Pennsylvania. Benzene has been known to cause cancer since prior to 1964, there is no safe level of exposure to benzene and US Steel manufactured, refined, designed, produced, processed, compounded, converted, packaged, sold, distributed, marketed, re-labeled, supplied and/or otherwise placed into the stream of commerce benzene and benzene-containing solvents used as ingredients in co-defendants' products including but not limited to Raffinate in Liquid Wrench, to which the Plaintiff was exposed.

c)    RADIATOR SPECIALTY COMPANY (hereinafter "Radiator Specialty Co." or "Defendant") is believed to be a North Carolina corporation with a principal place of business at the above-stated address, and which continuously, regularly and systematically conducts interstate business in the Commonwealth of Pennsylvania and the City and County of Philadelphia. This court has general personal jurisdiction over the Defendant because the Defendant registered with the Pennsylvania Department of State and thereby consented to the general personal jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S. § 5301(a)(2)(i)-(ii), 15 Pa.C.S. § 402(d) and 15 Pa.C.S. 376(f). This court also has specific jurisdiction over this Defendant because it purposefully availed itself of the benefits and protection of Pennsylvania's jurisdiction and Plaintiffs' causes of action arise out of or are related to the Defendant's jurisdictional contacts with Pennsylvania. These jurisdictional contacts include that the Defendant's product, Liquid Wrench, was comprised of approximately 90% raffinate that was manufactured by US Steel in

10

Pennsylvania and the Defendant exchanged communications with US Steel in Pennsylvania concerning the benzene content of the Raffinate and health hazards of Raffinate, which communications were relied upon by the Defendant in its use of the Raffinate, the design of the Liquid Wrench and in preparing warnings for the Liquid Wrench. Defendant therefore committed tortious acts in Pennsylvania which contributed to the cause of the Plaintiff's injuries. Benzene has been known to cause cancer since prior to 1964, there is no safe level of exposure to benzene and Defendant Radiator Specialty Co. manufactured, refined, designed, produced, processed, compounded, converted, packaged, sold, distributed, marketed, re-labeled, supplied and/or otherwise placed into the stream of commerce benzene-containing products, including but not limited to Liquid Wrench, to which the Plaintiff was exposed.

      d)      TEXACO INC. (hereinafter "Texaco") upon information and belief is a Delaware corporation or other business entity having its principal place of business at the above-stated address, and which continuously, regularly and systematically conducts interstate business in the Commonwealth of Pennsylvania and the City and County of Philadelphia. This court has general personal jurisdiction over the Defendant because the Defendant registered with the Pennsylvania Department of State and thereby consented to the general personal jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S. § 5301(a)(2)(i)-(ii), 15 Pa.C.S. § 402(d) and 15 Pa.C.S. 376(f). This court also has specific jurisdiction over this Defendant because it purposefully availed itself of the benefits and protection of Pennsylvania's jurisdiction and the Plaintiffs' causes of action arise out of or relate to Defendant's contacts with Pennsylvania. These contacts include, but are not limited to, obtaining knowledge of the health hazards of gasoline, benzene and solvents in

11

Case ID: 220800385

Pennsylvania; marketing its products in Pennsylvania; distributing its products through Pennsylvania; conspiring with co-Defendants in Pennsylvania; and, selling its products to co-Defendants which were incorporated into the co-Defendants' products in Pennsylvania while withholding information about the health hazards of its products from those co-Defendants in Pennsylvania, which caused those co-Defendants to incorporate the Defendant's products into the co-Defendants' products and not issue adequate warnings for co-Defendants' products in Pennsylvania. Benzene has been known to cause cancer since prior to 1964, there is no safe level of exposure to benzene and Defendant Texaco manufactured, produced, processed, compounded, converted, sold, marketed, distributed, supplied, re-labeled and/or otherwise placed into the stream of commerce products containing benzene, as a known ingredient and/or as a contaminant and/or component of which it knew or should have known, including but not limited to gasoline, Rubber Repair Kit and solvent ingredients used in co-defendants' products, to which Plaintiff was exposed.

e)    CRC INDUSTRIES, INC. (hereinafter "CRC Industries" or "Defendant") upon information and belief is a Pennsylvania corporation or other business entity having its principal place of business at the above-stated address, and which continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the City and County of Philadelphia. Benzene has been known to cause cancer since prior to 1964, there is no safe level of exposure to benzene and Defendant CRC Industries manufactured, produced, processed, compounded, converted, sold, marketed, distributed, supplied, re-labeled and/or otherwise placed into the stream of commerce products containing benzene, as a known ingredient and/or as a contaminant and/or component of

Case ID: 220800385

which it knew or should have known, including but not limited to CRC Brakleen products and carburetor cleaner, to which Plaintiff was exposed.

f)      SAFETY-KLEEN SYSTEMS, INC. (hereinafter "Safety-Kleen" or "Defendant"), is believed to be a Wisconsin corporation or other business entity having its principal place of business at the above-stated address, which continuously, regularly and systematically conducts interstate business in the Commonwealth of Pennsylvania and the County of Philadelphia. This court has general personal jurisdiction over the Defendant because the Defendant registered with the Pennsylvania Department of State and thereby consented to the general personal jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S. § 5301(a)(2)(i)-(ii), 15 Pa.C.S. § 402(d) and 15 Pa.C.S. 376(f). This court also has specific jurisdiction over this Defendant because it purposefully availed itself of the benefits and protection of Pennsylvania's jurisdiction and the Plaintiffs' causes of action arise out of or relate to Defendant's contacts with Pennsylvania. These contacts include, but are not limited to, obtaining knowledge of the health hazards of mineral spirits, benzene and solvents in Pennsylvania; marketing its products in Pennsylvania; distributing its products through Pennsylvania; conspiring with co-Defendants in Pennsylvania; and, purchasing mineral spirits that were manufactured in Pennsylvania by Pennsylvania corporations, including Sunoco. Benzene has been known to cause cancer since prior to 1964, there is no safe level of exposure to benzene and Defendant, Safety-Kleen manufactured, refined, designed, produced, processed, compounded, converted, packaged, sold, distributed, marketed, re-labeled, supplied and/or otherwise placed into the stream of commerce benzene-containing products, including but not limited to Safety-Kleen parts-washing machines and Safety-Kleen 105 Solvent Recycled parts-washing solvents, to

13

Case ID: 220800385

which the Plaintiff was exposed.

g)    UNION OIL COMPANY OF CALIFORNIA d/b/a/ Unocal and AMSCO, Individually and as Successor in Interest to American Mineral Spirits Company a/k/a AMSCO (hereinafter "UNOCAL" or "Defendant") it is believed to be a corporation organized and existing under the laws of the State of California having its principal place of business at the above-stated address, which continuously, regularly and systematically conducts interstate business in the Commonwealth of Pennsylvania and the County of Philadelphia. This court has general personal jurisdiction over the Defendant because the Defendant registered with the Pennsylvania Department of State and thereby consented to the general personal jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S. § 5301(a)(2)(i)-(ii), 15 Pa.C.S. § 402(d) and 15 Pa.C.S. 376(f). This court also has specific jurisdiction over this Defendant because it purposefully availed itself of the benefits and protection of Pennsylvania's jurisdiction and the Plaintiffs' causes of action arise out of or relate to Defendant's contacts with Pennsylvania. These contacts include, but are not limited to, operating a UNOCAL distribution center in Conshohocken, Pennsylvania from which UNOCAL obtained benzene-containing solvents manufactured by Pennsylvania companies in Pennsylvania, including Sunoco, and sold benzene-containing solvents to companies, including CRC Industries, Inc., which solvents were used to manufacture product in Pennsylvania that Plaintiff was exposed to; obtaining knowledge of the health hazards of benzene and solvents in Pennsylvania; marketing its products in Pennsylvania; distributing its products through Pennsylvania; conspiring with co-Defendants in Pennsylvania; and, selling its products to co-Defendants which were incorporated into the co-Defendants' products in Pennsylvania while withholding information about the health

Case ID: 220800385

hazards of its products from those co-Defendants in Pennsylvania, which caused those co-Defendants to incorporate the Defendant's products into the co-Defendants' products and not issue adequate warnings for co-Defendants' products in Pennsylvania. Benzene has been known to cause cancer since prior to 1964, there is no safe level of exposure to benzene and UNOCAL manufactured, refined, designed, produced, processed, compounded, converted, packaged, sold, distributed, marketed, re-labeled, supplied and/or otherwise placed into the stream of commerce benzene-containing products, including benzene-containing mineral spirits used in Safety-Kleen parts-washing machines and parts-washing solvents and toluene, xylene, heptane and mineral spirits used in the identified CRC Industries, Inc. products, to which the Plaintiff was exposed.

       h)     UNIVAR SOLUTIONS USA INC. f/k/a UNIVAR USA INC. Individually and as successor in interest to Chemcentral and Van Waters & Rogers (hereinafter "Univar" or "Defendant") upon information and belief is a Delaware corporation or other business entity having its principal place of business at the above-stated address, and which continuously, regularly and systematically conducts interstate business in the Commonwealth of Pennsylvania and the City and County of Philadelphia. This court has general personal jurisdiction over the Defendant because the Defendant registered with the Pennsylvania Department of State and thereby consented to the general personal jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S. § 5301(a)(2)(i)-(ii), 15 Pa.C.S. § 402(d) and 15 Pa.C.S. 376(f). This court also has specific jurisdiction over this Defendant because it purposefully availed itself of the benefits and protection of Pennsylvania's jurisdiction and the Plaintiffs' causes of action arise out of or relate to Defendant's contacts with Pennsylvania. These contacts include, but are not limited to, operating a Chemcentral

Case ID: 220800385

and Univar distribution center in Morrisville, Pennsylvania from which Chemcentral and Univar obtained benzene-containing solvents manufactured by Pennsylvania companies in Pennsylvania, including Sunoco, and sold benzene-containing solvents to companies, including CRC Industries, Inc., which solvents were used to manufacture product in Pennsylvania that Plaintiff was exposed to; obtaining knowledge of the health hazards of benzene and solvents in Pennsylvania; marketing its products in Pennsylvania; distributing its products through Pennsylvania; conspiring with co-Defendants in Pennsylvania; and, selling its products to co-Defendants which were incorporated into the co-Defendants' products in Pennsylvania while withholding information about the health hazards of its products from those co-Defendants in Pennsylvania, which caused those co-Defendants to incorporate the Defendant's products into the co-Defendants' products and not issue adequate warnings for co-Defendants' products in Pennsylvania. Benzene has been known to cause cancer since prior to 1964, there is no safe level of exposure to benzene and Defendant Univar manufactured, produced, processed, compounded, converted, sold, marketed, distributed, supplied, re-labeled and/or otherwise placed into the stream of commerce products, including but not limited to mineral spirits, toluene, xylene, naphtha and other petroleum solvent products used as ingredients in co-Defendants' products, including but not limited to CRC Brakleen and carburetor cleaners and products, to which the Plaintiff was exposed.

i)     ASHLAND, LLC. f/k/a Ashland, Inc. (hereinafter "Ashland" or "Defendant"), is believed to be a Kentucky corporation with a principal place of business at the above-stated address, yet which continuously, regularly and systematically conducts interstate business in the Commonwealth of Pennsylvania and the County of Philadelphia.

16

Case ID: 220800385

This court has general personal jurisdiction over the Defendant because the Defendant registered with the Pennsylvania Department of State and thereby consented to the general personal jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S. § 5301(a)(2)(i)-(ii), 15 Pa.C.S. § 402(d) and 15 Pa.C.S. 376(f). This court also has specific jurisdiction over this Defendant because it purposefully availed itself of the benefits and protection of Pennsylvania's jurisdiction and the Plaintiffs' causes of action arise out of or relate to Defendant's contacts with Pennsylvania. These contacts include, but are not limited to, operating an Ashland distribution center in Pennsylvania from which Ashland obtained benzene-containing solvents manufactured by Pennsylvania companies in Pennsylvania, including Sunoco, and sold benzene-containing solvents to companies, including CRC Industries, Inc., which solvents were used to manufacture product in Pennsylvania that Plaintiff was exposed to; obtaining knowledge of the health hazards of benzene and solvents in Pennsylvania; marketing its products in Pennsylvania; distributing its products through Pennsylvania; conspiring with co-Defendants in Pennsylvania; and, selling its products to co-Defendants which were incorporated into the co-Defendants' products in Pennsylvania while withholding information about the health hazards of its products from those co-Defendants in Pennsylvania, which caused those co-Defendants to incorporate the Defendant's products into the co-Defendants' products and not issue adequate warnings for co-Defendants' products in Pennsylvania. Benzene has been known to cause cancer since prior to 1964, there is no safe level of exposure to benzene and Defendant Ashland manufactured, refined, designed, produced, processed, compounded, converted, packaged, sold, distributed, marketed, re-labeled, supplied and/or otherwise placed into the stream of commerce benzene-containing products, including but not limited to NAPA branded brake

Case ID: 220800385

cleaner and carburetor cleaner products, and benzene-containing mineral spirits used in Safety-Kleen parts-washing machines and parts-washing solvents, toluene, xylene and other solvent ingredients used in CRC Brakleen products and CRC carburetor cleaner, to which the Plaintiff was exposed.

j)    GENUINE PARTS COMPANY d/b/a NAPA (hereinafter "GPC" or "Defendant") and is believed to be a corporation organized and existing under the laws of the State of Georgia having its principal place of business at the above-stated address, which continuously, regularly and systematically conducts interstate business in the Commonwealth of Pennsylvania and the County of Philadelphia. This court has general personal jurisdiction over the Defendant because the Defendant registered with the Pennsylvania Department of State and thereby consented to the general personal jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S. § 5301(a)(2)(i)-(ii), 15 Pa.C.S. § 402(d) and 15 Pa.C.S. 376(f). Benzene has been known to cause cancer since prior to 1964, there is no safe level of exposure to benzene and GPC manufactured, refined, designed, produced, processed, compounded, converted, packaged, sold, distributed, marketed, re-labeled, supplied and/or otherwise placed into the stream of commerce benzene-containing products, including but not limited to NAPA brake cleaners, NAPA carburetor cleaners, NAPA starter fluid, NAPA brake fluid, Balkamp tire repair kits, Camel tire repair kits, and other brands of tire repair kits, to which Plaintiff was exposed. GPC also marketed, distributed and sold co-Defendants' products, to which Plaintiff was exposed.

k)    ILLINOIS TOOL WORKS, INC., Individually and Successor-in-Interest to Pennzoil-Quaker State Company (hereinafter "ITW" or "Defendant"), is believed to be an

Case ID: 220800385

Illinois corporation or other business entity having its principal place of business at the above-stated address, and which continuously, regularly and systematically conducts interstate business in the Commonwealth of Pennsylvania and the City and County of Philadelphia. This court has general personal jurisdiction over the Defendant because the Defendant registered with the Pennsylvania Department of State and thereby consented to the general personal jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S. § 5301(a)(2)(i)-(ii), 15 Pa.C.S. § 402(d) and 15 Pa.C.S. 376(f). This court also has general and specific jurisdiction over ITW because it acquired and succeeded to the liabilities and jurisdictional contacts of Pennzoil-Quaker State Company, a company organized under the laws of Pennsylvania and/or with a principal place of business in Pennsylvania, and which manufactured in Pennsylvania the identified Gumout products that the Plaintiff was exposed to. Benzene has been known to cause cancer since prior to 1964, there is no safe level of exposure to benzene and Defendant, ITW manufactured, refined, designed, produced, processed, compounded, converted, packaged, sold, distributed, marketed, re-labeled, supplied and/or otherwise placed into the stream of commerce benzene-containing products, including but not limited to Gumout, to which Plaintiff was exposed.

l)    SHELL USA, INC. f/k/a Shell Oil Company (hereinafter "Shell" or "Defendant") upon information and belief is a Delaware corporation or other business entity having its principal place of business at the above-stated address, and which continuously, regularly and systematically conducts interstate business in the Commonwealth of Pennsylvania and the City and County of Philadelphia. This court has general personal jurisdiction over the Defendant because the Defendant registered with the Pennsylvania Department of State and thereby consented to the general personal

19

Case ID: 220800385

jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S. § 5301(a)(2)(i)-(ii), 15 Pa.C.S. § 402(d) and 15 Pa.C.S. 376(f). This court also has specific jurisdiction over this Defendant because it purposefully availed itself of the benefits and protection of Pennsylvania's jurisdiction and the Plaintiffs' causes of action arise out of or relate to Defendant's contacts with Pennsylvania. These contacts include, but are not limited to, operating a Shell distribution center in Pennsylvania from which Shell sold benzene-containing solvents to companies, including CRC Industries, Inc., which solvents were used to manufacture product in Pennsylvania that Plaintiff was exposed to; obtaining knowledge of the health hazards of benzene and solvents in Pennsylvania; marketing its products in Pennsylvania; distributing its products through Pennsylvania; conspiring with co-Defendants in Pennsylvania; and, selling its products to co-Defendants which were incorporated into the co-Defendants' products in Pennsylvania while withholding information about the health hazards of its products from those co-Defendants in Pennsylvania, which caused those co-Defendants to incorporate the Defendant's products into the co-Defendants' products and not issue adequate warnings for co-Defendants' products in Pennsylvania. Benzene has been known to cause cancer since prior to 1964, there is no safe level of exposure to benzene and Defendant Shell manufactured, produced, processed, compounded, converted, sold, marketed, distributed, supplied, re-labeled and/or otherwise placed into the stream of commerce products, including but not limited to mineral spirits, toluene, xylene, naphtha and other petroleum solvent products used as ingredients in co-Defendants' products, including but not limited to CRC Brakleen and carburetor cleaners and products, to which the Plaintiff was exposed.

## COUNT I – NEGLIGENCE & GROSS NEGLIGENCE

Case ID: 220800385

13.     Plaintiffs hereby adopt and incorporate by reference each and every statement and averment contained in each of the foregoing paragraphs, as if each of said paragraphs were set forth herein with particularity.

14.     All Defendants are sued for their negligence as manufactures, marketers, distributors, and sellers of benzene-containing products.

15.     Plaintiff used, worked with, around and in close proximity to, handled, inhaled, dermally absorbed, ingested and was otherwise directly and indirectly exposed to Defendants' benzene-containing products and/or vapors therefrom, during the ordinary, foreseeable and intended use of the Defendants' benzene-containing products.

16.     Defendants knew, or in the exercise of reasonable care, could and/or should have known that persons such as Plaintiff would use, worked with, around and in close proximity to, handled, inhaled, dermally absorbed, ingested and was otherwise directly and indirectly exposed to their benzene-containing products and/or vapors therefrom.

17.     Defendants knew, should and/or reasonably could have known that benzene causes blood and bone marrow poising and damage, damage to DNA, chromosome damage, cancer, leukemia, and other blood and bone marrow disease and damage, and is otherwise extremely dangerous to human health.

18.     Defendants knew, should and/or could have reasonably known that their benzene-containing products contained benzene.

19.     Defendants knew, should and/or reasonably could have known that their benzene-containing products were carcinogenic, leukemogenic, inherently defective, ultra-hazardous, dangerous, deleterious, poisonous and otherwise highly harmful to the body and health of Plaintiff and persons similarly situated.

Case ID: 220800385

20.     Plaintiff and similarly situated persons did not and could not know of the nature and extent of the danger to their bodies and health, including the risk for cancer, and leukemia caused by exposure to the Defendants' benzene-containing products and/or vapors therefrom.

21.     The Defendants knew, should and/or reasonably could have known that Plaintiff and other persons similarly situated, would come into direct and indirect contact with, handle, inhale, ingest, dermally absorb and otherwise be exposed to benzene during the ordinary and foreseeable use of said benzene-containing products.

22.     The Defendants knew, should and/or reasonably could have known that Plaintiff, his employers and other persons similarly situated did not know, understand or fully appreciate nature and extent of the danger to their bodies and health, including the risk for cancer, and leukemia caused by exposure to the Defendants' benzene-containing products and/or vapors therefrom.

23.     The Defendant had a duty to all consumers, workers and employers to exercise reasonable care in the creation, manufacturing, designing, formulating, refining, producing, processing, packaging, marketing, selling, warning, distributing and otherwise placing their respective benzene-containing products into the stream of commerce, including a duty to assure that the products did not pose a risk of injury, harm, disease and death, including cancer, and leukemia.

24.     Defendants breached their duty and were negligent and grossly negligent because, knowing all of the above, they:

  a.     Manufactured, produced, designed, formulated, processed, packaged, compounded, converted, sold, marketed, re-labeled, supplied, distributed and/or otherwise placed in the stream of commerce products that contained benzene, i.e. the benzene-containing products;

  b.     Failed to take precautions to warn and/or adequately warn Plaintiff and his

Case ID: 220800385

employers that their benzene-containing products contain benzene;

c.     Failed to take precautions to warn and/or adequately warn Plaintiff and his employers of the dangers to their health, including the nature and extent thereof, caused by exposure to benzene and the benzene-containing products, including the risk for contracting leukemia;

d.     Failed to take precautions to warn or adequately warn Plaintiff and his employers of the reasonably safe, sufficient and necessary safeguards, protective equipment, wearing apparel, appliances and engineering controls to protect them from exposure to benzene and physical harm, including leukemia, caused by working with and around the benzene-containing products;

e.     Failed and omitted to place any warnings or notices, or adequate and sufficient warnings and notices, on the containers in which the benzene-containing products were sold, contained, delivered and used in conjunction with, or shipping and billing documents, regarding the known or potential risks, dangers and harm therefrom, including contracting lymphohematopoietic disease, and the precautions necessary for use with the benzene-containing products to protect against the risk of dangers to health;

f.     Continued to manufacture, produce, process, sell, market, distribute, supply and/or otherwise place into the stream of commerce known cancer-causing products, to-wit, benzene-containing products;

g.     Failed and omitted to package the said chemical products so that, in the ordinary and foreseeable use and handling of them, Plaintiff and other persons similarly situated would not come into direct and indirect contact with, handle, inhale, dermally absorb and otherwise be exposed to benzene-containing products and/or vapors therefrom;

h.     Failed and omitted to take all reasonable, necessary, proper and prudent measures to assure that all necessary warnings, notices and instructions as to the products' benzene content, leukemogenic, carcinogenic, deleterious, poisonous and dangerous nature, and the reasonable and necessary safe guards and procedures for use in conjunction with the products, reached the actual end user, and were complied with by Plaintiff's employers and end users including Plaintiff and other persons similarly situated;

i.     Defendants knew, should and/or could have known that the failure to warn and/or adequately warn of the risks, dangers and harm created by exposure to the benzene-containing products, and the reasonably safe and sufficient precautions, practices, personal protective equipment, wearing apparel, appliances and engineering controls to use with the benzene-containing

23

products, would act as an inducement to Plaintiff and other end users similarly situated to come into direct and indirect contact with, handle, inhale, dermally absorb and otherwise be exposed to benzene-containing products and/or vapors therefrom, without proper and adequate protection;

j.      Defendants failed to train and advise the Plaintiff and his employers of how to adopt and implement a safe, sufficient and proper plan and method to safely handle and use their benzene-containing products, resulting in the creation of an atmosphere that the Defendants' benzene-containing products were relatively safe to work with and around, handle, come in direct and indirect contact with, inhale, ingest, dermally absorb and otherwise be exposed to;

k.      Defendants knew, should and/or could have known, but also failed to take reasonable, sufficient and proper precautions reasonably calculated to recommend methods to improve the work environment, such as that of Plaintiff's employer, to which Defendants sold, marketed, distributed, supplied and/or otherwise placed into the stream of commerce, benzene-containing products;

l.      Failed to comply with all federal, state, local and trade statutes, codes, regulations and ordinances relating to the benzene content of their products, actions required to determine and analyze the hazardous nature of their products and the warnings and instructions accompanying same, including but not limited to 29 CFR 1910.1200; 29 CFR 1910.1028; and, 49 CFR Parts 100-199;

m.      Failed to take all reasonable, necessary, proper and prudent measures to test their benzene-containing products to determine the products' benzene content and the quantity of benzene released into the breathing zone of the end user, and dermally absorbed by the end user, during the ordinary, intended and foreseeable use thereof;

n.      Failed to test their benzene-containing products for health hazards, including lymphohematopoietic disease;

o.      Failed to test the adequacy of labels, warnings and instructions appearing upon or distributed with their benzene-containing products;

p.      Failed to take all reasonable, necessary, proper and prudent measures to make their benzene-containing products safe for their intended and foreseeable use.

q.      Failed to properly and adequately manufacture, design, produce and process their products so as to eliminate all benzene content thereof;

Case ID: 220800385

r.    Failed to research, develop, design, manufacture, produce, market and sell safer alternative products, to wit products which did not contain benzene;

s.    Continued to manufacture and sell products containing benzene despite fully knowledge that there were safer alternative products;

t.    Continuing to manufacture and sell products containing benzene despite actually manufacturing and selling products that did not contain benzene which were used for the same purposes as their benzene-containing products and which were equally effective; and

u.    For these reasons, Defendants grossly deviated from the ordinary standard of care.

25.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff contracted and suffered from AML, and multiple side effects, conditions, illnesses and symptoms caused by AML and the medical treatments necessitated thereby, which caused him pain, suffering, disability, disfigurement, deformity, impairment, mental anguish, anxiety, humiliation, and increased susceptibility to infection and progression of his cancer to AML.

26.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff was prevented from engaging in those activities from which he derives life's pleasures.

27.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff has in the past, continues to and in the future to sustain economic losses.

28.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff was required to spend various sums of money for medical treatments, hospitalizations and medicines, to treat Plaintiff's disease and injuries, and has incurred additional economic expenses and losses, which expenses and loses may continue to accrue.

**WHEREFORE**, for all of the foregoing reasons, Plaintiffs pray for judgment from Defendants, individually, jointly and severally, in an amount in excess of fifty thousand dollars ($50,000.00), together with such other and further relief as this Court deems just and appropriate,

Case ID: 220800385

under the circumstances, including punitive damages, costs, interest, and delay damages.

## COUNT II -   BREACH OF WARRANTY

29.     Plaintiffs hereby adopt and incorporate by reference each and every statement and averment contained in each of the foregoing paragraphs, as if each of said paragraphs were set forth herein with particularity.

30.     Defendants, individually, jointly and severally expressly and/or impliedly warranted, including under the Pennsylvania Uniform Commercial Code, to Plaintiff and other end users of their benzene-containing products, who were similarly situated, that the benzene-containing products, were merchantable, reasonably fit and safe for their intended, stated and described purpose and application, when in fact they were not.

31.     Defendants, individually, jointly and severally breached said warranties to Plaintiff, in that their benzene-containing products were inherently defective, ultra-hazardous, dangerous, deleterious, poisonous, carcinogenic, unfit for use, not properly merchantable and not safe, as marketed, for their foreseeable use and purpose, in that they contained benzene and caused lymphohematopoietic diseases, including AML, were defectively designed and lacked warnings, instructions and training, or adequate and sufficient warnings, instructions and training, as more fully set forth in Counts I, III and IV, and including because:

> a.     They contained benzene and benzene causes cancer, leukemia and other harm to the blood and bone marrow of humans.
>
> b.     They lacked all elements necessary to make them safe for their intended and foreseeable use;
>
> c.     The Defendants failed to take precautions to warn and/or adequately warn Plaintiff and his employers that their benzene-containing products contained benzene;
>
> d.     They lacked warnings and instructions, and or adequate warnings and

Case ID: 220800385

instructions, of the dangers to human health, including the nature and extent thereof, caused by exposure to benzene and the benzene-containing products, including the risk for contracting cancer, leukemia, and other blood and bone marrow disease;

e.      They did not warn or adequately warn Plaintiff and his employers of the reasonably safe, sufficient and necessary safeguards, protective equipment, wearing apparel, appliances and engineering controls to protect them from exposure to benzene and physical harm, including leukemia, caused by working with and around the benzene-containing products;

f.      There were no warnings or notices, or adequate and sufficient warnings and notices, on the containers in which the benzene-containing products were sold, contained, delivered and used in conjunction with, or shipping and billing documents, regarding the known or potential risks, dangers and harm therefrom, including contracting lymphohematopoietic disease, and the precautions necessary for use with the benzene-containing products to protect against the risk of dangers to health;

g.      Failed to train and advise, or adequately train and advise, the Plaintiff and his employers of how to adopt and implement a safe, sufficient and proper plan and method to safely handle and use their benzene-containing products, resulting in the creation of an atmosphere that the Defendants' benzene-containing products were relatively safe to work with and around, handle, come in direct and indirect contact with, inhale, ingest, dermally absorb and otherwise be exposed to;

h.      Failed to train, communicate, publish, adopt and enforce a safety plan and a safe method of handling and working with their benzene-containing products;

i.      They failed to recommend methods to improve the work environment;

j.      The Defendants failed to develop alternative products, including products which did not contain benzene;

k.      The Defendants failed to assure that warnings, instructions, advisements, and training reached Plaintiff's employer, Plaintiff and other end users similarly situated, such that Plaintiff and other end users were adequately warned and protected, against the hazards posed by benzene, as contaminants in, or as ingredients of their benzene-containing products;

l.      The ordinary and foreseeable use of the Defendants' benzene-containing products, or those benzene-containing products of Defendants which were distributed to Plaintiff's employer, is an intrinsically dangerous and ultra-hazardous activity;

27

Case ID: 220800385

m.    The Defendants' benzene-containing products were also defectively designed in that their hazards outweighed the benefit, if any, of the products' benzene content;

n.    The Defendants' benzene-containing products were defective in that they failed to meet their consumer's expectations for safety;

o.    Were packaged in a manner that increased the risk for exposure to benzene and increased the amount of benzene exposure end users sustained;

p.    Contained directions for use that increased the risk for exposure to benzene and increased the amount of benzene exposure end users sustained;

q.    Continued to manufacture and sell products containing benzene despite fully knowledge that there were safer alternative products; and,

r.    Continuing to manufacture and sell products containing benzene despite actually manufacturing and selling products that did not contain benzene which were used for the same purposes as their benzene-containing products and which were equally effective.

32.    Defendants' warranties were made both orally and in writing, and Plaintiff is no longer in possession of the written materials upon which such warranties were made.

33.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff contracted and suffers from AML, and multiple side effects, conditions, illnesses and symptoms caused by AML and the medical treatments necessitated thereby, which cause him pain, suffering, disability, disfigurement, deformity, impairment, mental anguish, anxiety, humiliation, and increased susceptibility to infection.

34.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff is prevented from engaging in those activities from which he derives life's pleasures.

35.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff has in the past, continues to and in the future to sustain economic losses.

36.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff

Case ID: 220800385

was required to spend various sums of money for medical treatments, hospitalizations and medicines, to treat Plaintiff's disease and injuries, which expenses may continue to accrue, and has incurred additional economic expenses and losses, which expenses and loses may continue to accrue.

**WHEREFORE**, for all of the foregoing reasons, Plaintiffs pray for judgment from Defendants, individually, jointly and severally in an amount in excess of fifty thousand dollars ($50,000.00), together with such other and further relief as this Court deems just and appropriate, under the circumstances, including punitive damages, costs, interest and delay damages.

## <u>COUNT III - STRICT LIABILITY</u>

37.    Plaintiffs hereby adopt and incorporate by reference each and every statement and averment contained in each of the foregoing paragraphs, as if each of said paragraphs were set forth herein with particularity.

38.    Defendants are and were, at all times material hereto, in the business of manufacturing, refining, designing, producing, processing, compounding, converting, packaging, selling, distributing, marketing, re-labeling, supplying and/or otherwise placing into the stream of commerce the benzene-containing products.

39.    The benzene-containing products were expected to and did reach the Plaintiff and his employers without substantial change in the condition in which they were sold.

40.    The benzene-containing products were defective when they left the Defendants' possession, custody and control.

41.    Plaintiff and his employers were the intended and foreseeable users of the Defendants' benzene-containing products, and it was intended by and foreseeable to the Defendants that the benzene-containing products would be used in the manner that the Plaintiff

Case ID: 220800385

and his employers used them in.

42.    The Defendants' benzene-containing products were defective because:

a.    They contained benzene and benzene causes cancer, leukemia and other harm to the blood and bone marrow of humans.

b.    They lacked all elements necessary to make them safe for their intended and foreseeable use;

c.    The Defendants failed to take precautions to warn and/or adequately warn Plaintiff and his employers that their benzene-containing products contained benzene;

d.    They lacked warnings and instructions, and or adequate warnings and instructions, of the dangers to human health, including the nature and extent thereof, caused by exposure to benzene and the benzene-containing products, including the risk for contracting cancer, leukemia, and other blood and bone marrow disease;

e.    They did not warn or adequately warn Plaintiff and his employers of the reasonably safe, sufficient and necessary safeguards, protective equipment, wearing apparel, appliances and engineering controls to protect them from exposure to benzene and physical harm, including leukemia, caused by working with and around the benzene-containing products;

f.    There were no warnings or notices, or adequate and sufficient warnings and notices, on the containers in which the benzene-containing products were sold, contained, delivered and used in conjunction with, or shipping and billing documents, regarding the known or potential risks, dangers and harm therefrom, including contracting lymphohematopoietic disease, and the precautions necessary for use with the benzene-containing products to protect against the risk of dangers to health;

g.    Failed to train and advise, or adequately train and advise, the Plaintiff and his employers of how to adopt and implement a safe, sufficient and proper plan and method to safely handle and use their benzene-containing products, resulting in the creation of an atmosphere that the Defendants' benzene-containing products were relatively safe to work with and around, handle, come in direct and indirect contact with, inhale, ingest, dermally absorb and otherwise be exposed to;

h.    Failed to train, communicate, publish, adopt and enforce a safety plan and a safe method of handling and working with their benzene-containing products;

Case ID: 220800385

i.      They failed to recommend methods to improve the work environment;

j.      The Defendants failed to develop alternative products, including products which did not contain benzene;

k.      The Defendants failed to assure that warnings, instructions, advisements, and training reached Plaintiff's employer, Plaintiff and other end users similarly situated, such that Plaintiff and other end users were adequately warned and protected, against the hazards posed by benzene, as contaminants in, or as ingredients of their benzene-containing products;

l.      The ordinary and foreseeable use of the Defendants' benzene-containing products, or those benzene-containing products of Defendants which were distributed to Plaintiff's employer, is an intrinsically dangerous and ultra-hazardous activity;

m.      The Defendants' benzene-containing products were also defectively designed in that their hazards outweighed the benefit, if any, of the products' benzene content;

n.      The Defendants' benzene-containing products were defective in that they failed to meet their consumer's expectations for safety;

o.      Were packaged in a manner that increased the risk for exposure to benzene and increased the amount of benzene exposure end users sustained;

p.      Contained directions for use that increased the risk for exposure to benzene and increased the amount of benzene exposure end users sustained; and

q.      The Defendants' benzene-containing products were defective in that the Defendants manufactured and sold the same products, or substantially similar products, that did not contain benzene which were used for the same purposes as their benzene-containing products and which were equally effective.

43.     As the direct and proximate result of the Defendants' acts and omissions, Plaintiff contracted and suffered from AML, and multiple side effects, conditions, illnesses and symptoms caused by AML and the medical treatments necessitated thereby, which caused him pain, suffering, disability, disfigurement, deformity, impairment, mental anguish, anxiety, humiliation, and increased susceptibility to infection and progression of his cancer to AML.

44.     As the direct and proximate result of the Defendants' acts and omissions, Plaintiff

31

Case ID: 220800385

was prevented from engaging in those activities from which he derives life's pleasures.

45.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff has in the past, continues to and in the future to sustain economic losses.

46.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff was required to spend various sums of money for medical treatments, hospitalizations and medicines, to treat Plaintiff's disease and injuries, and has incurred additional economic expenses and losses, which expenses and loses may continue to accrue.

**WHEREFORE**, for all of the foregoing reasons, Plaintiffs pray for judgment from Defendants, individually, jointly and severally in an amount in excess of fifty thousand dollars ($50,000.00), together with such other and further relief as this Court deems just and appropriate, under the circumstances, including punitive damages, costs, interest and delay damages.

## COUNT IV - INTENTIONAL TORT – BATTERY & FRAUD

47.    Plaintiffs hereby adopt and incorporate by reference each and every statement and averment contained in each of the foregoing paragraphs, as if each of said paragraphs were set forth herein with particularity.

48.    Defendants committed the intentional tort of battery by causing the Plaintiff's exposure to benzene-containing products and benzene knowing that those exposures would cause harm to the Plaintiff.

49.    Defendants knew, foresaw and intended that their benzene-containing products were used in the manner in which Plaintiff and Plaintiff's employers used them, and that benzene and the benzene-containing products would be released into the atmosphere while using the benzene-containing products, and Plaintiff and others similarly situated would work with, inhale, ingest, dermally absorb, handle or directly and indirectly come into contact with, and/or otherwise

Case ID: 220800385

be exposed to benzene, which created a hazardous and unsafe condition and risk to the health of Plaintiff and others similarly situated.

50.    Defendants knew that their benzene-containing products were inherently defective, ultra-hazardous, dangerous, deleterious, poisonous, carcinogenic, leukemogenic and otherwise highly harmful to the Plaintiff and persons similarly situated.

51.    Defendants knew that their products, identified herein, contained benzene.

52.    Defendants knew that end users, such as the Plaintiff would work with and around, and be exposed to benzene as the result of the use of the Defendants' benzene-containing products in the course of their work related duties and other activities.

53.    Defendants knew, through information in their possession and control, and other information so obvious to them so as to be imputed to them, that benzene was capable of causing leukemia and other blood and bone marrow disorders, including AML.

54.    Defendants knew, through information in their possession and control, and other information so obvious to them so as to be imputed to them, that there is no safe level of exposure to benzene.

55.    Defendants were capable of manufacturing, producing and processing the identified products in a manner that eliminated or significantly reduced their benzene content.

56.    Defendants knew, through information in their possession and control, and other information so obvious to them so as to be imputed to them, that their benzene-containing products placed the Plaintiff, and other end users similarly situated, at a significantly increased risk for contracting aplastic anemia, cancer, leukemia and other blood and bone marrow disorders, including AML as a direct and proximate result of exposure to the benzene-containing products.

57.    Defendants knew that Plaintiff, his employers and coworkers, and other end users

33

Case ID: 220800385

similarly situated, did not know of or appreciate that that benzene-containing products' contained benzene content, or that benzene and the benzene-containing products were capability of causing cancer, leukemia and other blood and bone marrow disorders, including AML.

58. Defendants knew that Plaintiff, his employers and coworkers, and other end users similarly situated, did not know of the proper and necessary personal protective equipment, appliances, wearing apparel, engineering controls, procedures and practices for use in conjunction with the benzene-containing products to prevent or minimize benzene exposure and the risk for contracting cancer, leukemia and other blood and bone marrow disorders, including AML.

59. Defendants knew that their failure to warn, instruct, train and advise the Plaintiff, his employers and coworkers of the identified products' benzene content and capability of causing cancer, leukemia and other blood and bone marrow disorders, including AML, would act as, and did in fact act as, an inducement for the Plaintiff to continually expose himself to their benzene-containing products without necessary and proper personal protective equipment, practices and procedures in order to reduce or eliminate benzene exposure and leukemia risk.

60. Defendants knew that their failures, by intent and omission, to warn, instruct, train and advise the Plaintiff, his employers and coworkers of the identified products' benzene content and capability of causing cancer, leukemia and other blood and bone marrow disorders, would act as, and did in fact act as, an inducement for the Plaintiff to continually expose himself to benzene and place himself at risk for contracting leukemia.

61. Defendants knew that their failures to warn, instruct and train the Plaintiff, his employers and coworkers of the proper and necessary personal protective equipment, work practices and procedure to avoid benzene exposure and the risk of contracting cancer, leukemia and other blood and bone marrow disorders, including AML, would act as, and did in fact act as,

Case ID: 220800385

an inducement for the Plaintiff to continually expose himself to benzene and place himself at risk for contracting leukemia through the use of their identified products without proper and necessary personal protective equipment, work practices and procedures.

62.     Defendants knew that their failures, by intent and omission, to warn, instruct and train the Plaintiff, his employers and coworkers would cause Plaintiff to aggravate his condition and situation, by preventing him from avoiding further exposure to these benzene-containing products, taking proper precautions to minimize or eliminate any risk from such exposure, seeking medical opinions regarding the true state of his medical condition or changing the nature of his job description or areas of work, so he would have no contact with Defendants' benzene-containing products.

63.     Defendants knew that properly and adequately warning, instructing and training the Plaintiff, his employers, coworkers and the general public of the benzene-containing products' benzene content and capability of causing cancer, leukemia and other blood and bone marrow disorders, including AML, would be detrimental to their business interests, as such would deter the purchase and use of said products, by the Plaintiff, his employers, coworkers and the general public.

64.      Despite all of this knowledge, Defendants willfully and wantonly, through affirmative acts or omissions:

    a.     Manufactured, produced, processed, marketed, sold and distributed to the Plaintiff, his employers and coworkers, products which contained a known carcinogenic and leukemogenic compound, benzene;

    b.     Did not eliminate or minimize the benzene content of the identified benzene-containing products;

    c.     Did not warn, instruct, train and advise the Plaintiff, his employers and coworkers of the identified products' benzene content;

Case ID: 220800385

d.      Did not warn, instruct, train and advise the Plaintiff, his employers and coworkers of the identified products' ability to cause cancer, leukemia and other blood and bone marrow disorders, including AML;

e.      Did not warn, instruct, train and advise the Plaintiff, his employers and coworkers of the insidious, highly hazardous and deleterious nature of benzene;

f.      Did not warn, instruct, train and advise the Plaintiff, his employers and coworkers that there is no safe level of exposure to benzene;

g.      Did not warn, instruct, train and advise the Plaintiff, his employers and coworkers of the necessary and proper personal protective equipment, practices and procedures to minimize or prevent benzene exposure and leukemia risk;

h.      Did not affix labels or warnings upon the identified products, their containers or shipping documents the warn, instruct, train and advise the Plaintiff, his employers and coworkers of the products' benzene content, and their cancer and leukemia risk;

i.      Did not affix labels or warnings upon the identified products, their containers or shipping documents the warn, instruct, train and advise the Plaintiff, his employers and coworkers that there is no safe level of exposure to benzene;

j.      Did not affix labels or warnings upon the identified products, their containers or shipping documents the warn, instruct, train and advise the Plaintiff, his employers and coworkers of the necessary and proper personal protective equipment, practices and procedures to minimize or prevent benzene exposure and leukemia risk;

k.      Did not post signs, warnings or other statements upon the premises of the Plaintiff's employers warn, instruct, train and advise the Plaintiff, his employers and coworkers of the products' benzene content, and their cancer and leukemia risk;

l.      Did not post signs, warnings or other statements upon the premises of the Plaintiff's employers warn, instruct, train and advise the Plaintiff, his employers and coworkers that there is no safe level of exposure to benzene;

m.      Did not post signs, warnings or other statements upon the premises of the Plaintiff's employers warn, instruct, train and advise the Plaintiff, his employers and coworkers of the necessary and proper personal protective equipment, practices and procedures to minimize or prevent benzene exposure and their cancer and leukemia risk;

Case ID: 220800385

n.    Did not train and advise Plaintiff, his employers and coworkers of how to adopt and implement a safe, sufficient and proper plan and method to properly handle and use their benzene-containing products, resulting in the creation of an atmosphere at Plaintiff's employer, that the Defendants' benzene-containing products were relatively safe to handle, come in direct and indirect contact with, inhale, ingest and dermally absorb;

o.    Sacrificed the health and safety of the workers and other end users of their benzene-containing products in order to further the Defendants' economic advantage, convenience and profit;

p.    Continued to manufacture and sell products containing benzene despite fully knowledge that there were safer alternative products;

q.    Continuing to manufacture and sell products containing benzene despite actually manufacturing and selling products that did not contain benzene which were used for the same purposes as their benzene-containing products and which were equally effective;

r.    Defendants committed fraud by withholding information of the health hazards of benzene and their products and by making misrepresentations of material fact to co-Defendants, Plaintiff, his coworkers and employer;

s.    Plaintiff, his employers and coworkers relied upon the Defendants for information and warnings regarding the products' health hazards and cancer risk and relied upon the Defendants to manufacture and sell reasonably safe products meeting consumers' expectations of safety;

t.    Defendants manufacturing end products using ingredients manufactured by co-Defendants relied upon those co-Defendants for information and warnings regarding the ingredients and products health hazards and cancer risk;

u.    Defendants possessed knowledge and information of the health hazards of benzene, including its ability to cause fatal blood poisoning, cancer, leukemia, DNA damage, chromosome damages, and other damage, disease and cancer to the blood and bone marrow;

v.    Defendants withheld and otherwise failed to disclose their knowledge and information of the health hazards of benzene, including its ability to cause fatal blood poisoning, cancer, leukemia, DNA damage, chromosome damages, and other damage, disease and cancer of the blood and bone marrow including AML;

w.    Defendants knew that the warnings and information they supplied for their

37

Case ID: 220800385

benzene-containing products were untrue, did not believe it to be true, were indifferent as to whether it was true, or because of special circumstances had a duty to know whether the statements were true; and

x.    A special relationship exists between the Plaintiff, his employers, the Defendants, as well as between Defendants which manufactured ingredients and co-Defendants which manufactured products using those ingredients.

65.    Defendants acts and omissions were unreasonable in their character, and made in disregard of a risk known to them or so obvious them that they must be taken to have been aware of it, and so great as to make it highly probable that harm would follow.

66.    Defendants acts and omission acts and omissions demonstrated a conscious indifference to their consequences, namely causing the Plaintiff to contract leukemia and other injuries identified herein.

67.    Defendants intended to cause harmful conduct to the Plaintiff through causing benzene exposure, and did so with the knowledge, belief and intent that such exposure could cause the Plaintiff to contract AML and other blood and bone marrow cancers and disorders.

68.    Defendants' intentional conduct in causing the Plaintiff to be exposed to benzene, did in fact cause physical harm to the Plaintiff by directly and proximately causing him to contract AML and other injuries and damages as set forth herein

69.    As the direct and proximate of the aforesaid willful, deliberate, wanton, knowing, purposeful and intentional acts and omissions, Plaintiff contracted and suffered from AML and multiple side effects, conditions, illnesses and symptoms caused by AML and the medical treatments necessitated thereby, which caused him pain, suffering, disability, disfigurement, deformity, impairment, mental anguish, anxiety, humiliation, and increased susceptibility to infection and progression of his cancer.

70.    As the direct and proximate of the aforesaid willful, deliberate, wanton, knowing,

Case ID: 220800385

purposeful and intentional acts and omissions, Plaintiff was prevented from engaging in those activities from which he derives life's pleasures.

71.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff has in the past, continues to and in the future to sustain economic losses.

72.    As the direct and proximate of the aforesaid willful, deliberate, wanton, knowing, purposeful and intentional acts and omissions, Plaintiff was required to spend various sums of money for medical treatments, hospitalizations and medicines, to treat Plaintiff's disease and injuries, and has incurred additional economic expenses and losses, which expenses and loses may continue to accrue.

**WHEREFORE**, for all of the foregoing reasons, Plaintiffs prays for judgment from Defendants, individually, jointly and severally in an amount in excess of fifty thousand dollars, ($50,000), together with such other and further relief as this Court deems just and appropriate, under the circumstances, including punitive damages, costs, interest and delay damages.

## <u>COUNT V – LOSS OF CONSORTIUM</u>

73.    Plaintiffs hereby adopt and incorporate by reference each and every statement and averment contained in each of the foregoing paragraphs, as if each of said paragraphs were set forth herein with particularity.

74.    At times material hereto, including from the date of Mr. Knight's diagnosis with AML to the present, Katie Knight is and was married to Clifford E. Knight.

75.    As the result of the injuries caused by the Defendants to Clifford E. Knight, Katie Knight has suffered a loss of consortium.

76.    Katie Knight has lost, continues to lose and in the future will lose the love, companionship, friendship, society, services, emotional support and financial support provided by

Case ID: 220800385

her husband, Clifford E. Knight.

77.    Katie Knight has incurred, continues to incur and in the future will incur significant medical and other expenses and costs to care for and treat Clifford E. Knight's injuries, and to replace the services and support which Clifford E. Knight would have provided but for the illness and injuries directly and proximately caused by the Defendants' wrongful conduct.

**WHEREFORE**, Plaintiffs pray for judgment in their favor and against the Defendants, jointly and/or severally, in amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), together with such other and further relief as this Court deems just and appropriate under the circumstances including compensatory damages, interest, costs and delay damages.

Respectfully submitted,<br>
**LOCKS LAW FIRM**

DATE:  August 2, 2022          By:    /s/ *Andrew J. DuPont*
                                      ANDREW J. DUPONT, ESQUIRE
                                      Attorneys for the Plaintiffs

Case ID: 220800385

## VERIFICATION

Clifford E. Knight and Katie Knight, Plaintiffs above, being duly sworn according to law, do depose and state that the allegations in the enclosed Civil Action Complaint are true and correct to the best of my knowledge, information and belief. We realize that this verification is taken pursuant to 42 Pa. C.S.A Section 4904, relating to unsworn falsification to authorities.

DATED: 6/18/22

_____
CLIFFORD E. KNIGHT

DATED: 6/18/22

_____
KATIE KNIGHT

41

Case ID: 220800385